**John and Joanne VESCHI, Parents of Vincent Veschi, A Minor, Petitioners,**

v.

**NORTHWESTERN LEHIGH SCHOOL DISTRICT, Respondent.**

Commonwealth Court of Pennsylvania.

Argued Dec. 9, 1999.
Decided April 3, 2001.

Philip J. Murren, Camp Hill, for petitioners.

John E. Freund III, Allentown, for respondent.

Before DOYLE, President Judge, COLINS, Judge, JIULIANTE, Senior Judge.

DOYLE, President Judge.

Before this Court is an appeal from an order of a Special Education Due Process Appeals Review Panel of the Department of Education (Appeals Panel) affirming a hearing officer's decision that the Northwestern Lehigh School District (District) is not obligated to provide speech and language therapy services to a student enrolled in a non-public school. Based on a review of the record, applicable federal and state law, and the facts presented to this Court, we reverse.

John and Joanne Veschi (the "Veschis") are the parents of the minor, Vincent Veschi (Vincent). In 1997, the Veschis enrolled Vincent in a local parochial school, St. Joseph the Worker School (St.Joseph's), for his kindergarten year. At that time, the Carbon Lehigh Intermediate Unit (IU) provided him with speech and language services. The IU notified the Veschis that it would no longer be providing these services to the Diocesan schools generally and for Vincent specifically. Therefore, in August 1998, Vincent's mother wrote to the District's special education director requesting that the District provide the services that Vincent needs.

On October 19, 1998, a District Multi Disciplinary Team completed a comprehensive evaluation report concluding that Vincent was eligible for speech and language therapy and devised, with input from the Veschis, an Individualized Education Program (IEP).[1] The IEP proposed speech/language therapy two times per week for thirty minutes each session. The District conditioned the provision of these services on Vincent's exclusive enrollment in the District's public schools, causing the Veschis to refuse to approve the Notice of Recommended Assignment.

On November 20, 1998, the Veschis requested a due process hearing, which was conducted on December 30, 1998. The Hearing Officer issued a decision indicating that the District was not obligated to provide Vincent with speech and language therapy while he was enrolled at a non-public school. The Veschis filed written exceptions under both Federal and State law. On February 5, 1999, the Appeals Panel affirmed the decision of the Hearing Officer, and this appeal ensued.[2]

In 1975, Congress passed the act now known as the Individuals with Disabilities Education Act (IDEA), 20 U.S.C. §§ 1400–1487. IDEA provides federal grants to states, which then use the funding as part of the appropriations provided to local educational agencies to assist the

1. An IEP is a written statement developed for each disabled child by a representative of the local education agency, or an IU, which must include: (1) present level of educational performance; (2) annual goals and objectives; (3) specific educational services to be provided; (4) needed transition services; (5) start date and duration; (6) objective criteria and evaluation procedures; and (7) schedules for determining whether objectives are being achieved. 20 U.S.C. § 1414; *Millersburg Area Sch. Dist. v. Lynda T.,* 707 A.2d 572, 574

(Pa.Cmwlth.), *petition for allowance of appeal denied,* 555 Pa. 748, 725 A.2d 1223 (1998).

2. This Court's standard of review from decisions of the Appeals Panel is limited to a determination of whether the adjudication is supported by substantial evidence, errors of law were committed, or constitutional rights were violated. *Brownsville Area School District v. Student X,* 729 A.2d 198 (Pa.Cmwlth.), *petition for allowance of appeal denied,* 560 Pa. 731, 745 A.2d 1225 (1999).

agencies in educating students with disabilities. Unfortunately, parts of IDEA were ambiguous and resulted in differing interpretations by the courts regarding the extent of coverage for special needs persons voluntarily attending private schools.[3] In 1997, Congress passed the IDEA Amendments of 1997, Pub.L. No. 105–17 ("Amendments"). The Amendments expressly provide that public school agencies are not required to pay the costs of special education services for a "particular child," and they are "not required to pay for special education and related services at a private school if that agency made a free appropriate public education[4] available to the child." *Fowler v. Unified School Dist. No. 259, Sedgwick Co., Kansas,* 128 F.3d 1431, 1435 n. 2 (10th Cir.1997). (Footnote added.) That is, states are only required to spend proportionate amounts on special education services for this class of students as a whole. 20 U.S.C. §§ 1412(a)(10)(A) and (C).[5] Thus, whatever their rights under prior law, Vincent and his parents now have no individual right under IDEA to the special education and related services in question.

■ One of the goals of the Pennsylvania Department of Education is to provide all exceptional children in the Common-

---

**3.** Some courts restricted the IDEA requirements, while others relied upon the U.S. Education Department's General Administrative Regulations (EDGAR), 34 C.F.R. §§ 76, 300 (1996) to compel school boards to provide services to disabled private school children. The courts following EDGAR held that such services must be provided where there would be no "significant additional costs ... borne by the state," *Russman v. Sobol,* 85 F.3d 1050, 1056 (2d Cir.1996), *vacated by, remanded by, Board of Educ. of Enlarged City Sch. Dist. Of City of Watervliet, N.Y. v. Russman,* 521 U.S. 1114, 117 S.Ct. 2502, 138 L.Ed.2d 1008 (1997), and where services will "neither add to nor subtract from [the religious] environment ...." *Zobrest v. Catalina Foothills Sch. Dist.,* 509 U.S. 1, 13, 113 S.Ct. 2462, 125 L.Ed.2d 1 (1993).

**4.** A "free appropriate public education" (FAPE) means special education and related services, provided at public expense and under public supervision, meeting the standards of the state educational agency and provided in conformity with an IEP. 20 U.S.C. § 1401(8). The state must provide special education and related services sufficient to meet the child's unique needs in the least restrictive environment. *Big Beaver Falls Area School District v. Jackson,* 155 Pa. Cmwlth. 219, 624 A.2d 806, *petition for allowance of appeal denied,* 535 Pa. 676, 636 A.2d 635 (1993).

**5.** Under 20 U.S.C. § 1412(a)(10)(A) and (C ):
  (A) Children enrolled in private schools by their parents
    (i) *In general*

To the extent consistent with the number and location of children with disabilities in the State who are enrolled by their parents in private elementary and secondary schools, provision is made for the participation of those children in the program assisted or carried out under this subchapter by providing for such children special education and related services in accordance with the following requirements ... (I) Amounts expended for the provision of those services by a local educational agency **shall** be equal to a proportionate amount of Federal funds made available under **this** subchapter.
(II) Such services **may** be provided to children with disabilities on the premises of private, including parochial, schools, to the extent consistent with law.

\* \* \*

(C) Payment for education of children enrolled in private schools without consent of or referral by the public agency
  (i) In general
Subject to subparagraph (A), this subchapter **does not require** a local educational agency to pay for the cost of education, including special education and related services, of a child with a disability **at a private school** or facility if that agency made a free appropriate public education available to the child and the parents elected to place the child in such private school or facility.
20 U.S.C. § 1412(a)(10)(A) and (C) (emphasis added).

wealth with an appropriate educational program.[6] *See* Public School Code of 1949 (Code), Act of March 10, 1949, P.L. 30, *as amended,* 24 P.S. §§ 13–1371 to 13–1382; 22 Pa.Code § 14.1. The primary responsibility for identifying all exceptional children and developing educational programs to meet their needs rests with the local school district. *See* Section 1371(2) of the Code, 24 P.S. § 13–1371(2); 22 Pa.Code §§ 14.2, 171.13. Placement in a private school, with the district bearing the responsibility for the attendant tuition, however, will only be approved if neither the local school district nor its supporting IU can provide an appropriate education for the child in question. *See* Section 1372(3) of the Code, 24 P.S. § 13–1372(3), 22 Pa. Code §§ 14.41–14.44, 171.13, 171.16. Tuition reimbursement is not a part of the matter before us, and the Veschis are not seeking tuition reimbursement. Section 502 of the Code permits school districts to establish and maintain special schools and departments to facilitate the educational needs of persons residing in the district. 24 P.S. § 5–502. The Veschis maintain that speech and language **therapy** services provided in the public schools are derived from the creation of a special department within the District to offer those services. More important, they cite to language in Section 502 which states: "No pupil shall be refused admission to the **courses** in these additional schools or **departments,** by reason of the fact that his elementary or academic education is being or has been received in a school other than a public school." *Id.* (emphasis added).

■ The crux of the Veschis' argument, and one with which we agree, is that they have a constitutionally protected right to decide where Vincent goes to school under *Pierce v. Society of Sisters,* 268 U.S. 510, 45 S.Ct. 571, 69 L.Ed. 1070 (1925), and *Wisconsin v. Yoder,* 406 U.S. 205, 92 S.Ct. 1526, 32 L.Ed.2d 15 (1972). We also agree that under IDEA and the laws of this Commonwealth, Vincent is an exceptional student, and is to be afforded "equal opportunity" to participate in specialized educational assistance programs.[7] We note that, under the Amendments, Congress does not relieve the District of its obligation to provide services, but only the obligation to provide services at the non-public school. The Veschis have consistently maintained that, while they would prefer to have services provided to Vincent at St. Joseph's, they are requesting provision of services for Vincent **at the District** while he still attends his parochial school (dual enrollment).

The Veschis maintain that neither State nor Federal law permits the District to require Vincent to forego his enrollment at St. Joseph's in order to receive the speech and language therapy services that the District agrees he needs. They maintain that federal law does not permit a school district to insist upon the type of condition imposed on Vincent before providing those services. They further contend that federal law does not prevent this Commonwealth from offering non-public school students services that exceed the federally-mandated minimum, and they allege that Pennsyl-

---

6. An "appropriate [educational] program" is defined in 22 Pa.Code § 14.1 and includes special education or related services for the exceptional school-aged child, provided at public expense and under public supervision, which meet the individual needs of the child, and are in conformity with an IEP. *See also* 20 U.S.C. § 1401(a)(18).

7. The State Board of Education has mandated:

Exceptional students and eligible young children who attend nonpublic schools **shall** be afforded **equal opportunity** to participate in special education services and programs and early intervention services and programs. 22 Pa.Code § 14.41(e) (emphasis added).

vania's less restrictive statutes afford a basis for provision of these services. Again, we must agree.

While the District is correct in its position that the new IDEA confers no individual rights, we are unsure as to how this fact supports the District's position that it may deny all services to Vincent unless he becomes a public school child. The District will conduct the sought-after speech and language classes on a scheduled basis, and 22 Pa.Code § 14.41(e) provides that Vincent must receive an "equal opportunity" to participate. The District maintains that "equitable participation," as construed by the courts, is, at best, a group right, requiring only that the recipient of federal funds (here, the IUs), set aside a proportionate amount of the IDEA subgrant to provide services for parent-placed private school students as a *class*.[8] We cannot see that this portion of the Amendments supports denial of services *at* a **District** facility that will be conducting those services anyway for children enrolled in public schools. The District has not asserted that there is no room in the classes; nor that the addition of this one child, or in fact other children similarly situated in private schools, would cause the District to spend significant sums beyond its resources. The District also has not asserted that it has expended the proportionate amount of federal funds in some other manner that has benefited private school students as a class. The District's position simply stated is that, if a child wishes to take advantage of a special education class at a school district facility, that student and his parents must completely abandon all of their rights to an education at a nonpublic school. Nowhere, under any statute, does the law confer such authority on the District.

The District contends that nothing in the Public School Code entitles a nonpublic school student to the right to dual enrollment in the public school system for the purpose of receiving selective services. We forcefully disagree. In *Woodland Hills School District v. Dept. of Education*, 101 Pa.Cmwlth. 506, 516 A.2d 875 (1986), we stated:

> The District's interpretation would deny any exceptional child who does not suffer from a mental or physical handicap which requires transportation the opportunity for dual enrollment. **Such a denial is not only contrary to the provisions of the Code but also is a result never intended by the legislature.** ... The parents' election to have their children attend a nonpublic school and to be dually enrolled in the District's gifted program should not impose on them the choice between a duty to provide midday transportation or in the alternative forego their children's right to gifted special education.

*Woodland Hills*, 516 A.2d at 878 (emphasis added). Furthermore, the District concedes that the Basic Education Circulars, published by the Pennsylvania Department of Education, **recommend** dual enrollment as a "genuine opportunity for equitable participation."

The U.S. Supreme Court has held that IDEA was intended to give handicapped children both an appropriate education and a free education, and that its interpretation should not be used to defeat one or the other of those objectives. *School Committee of Burlington v. Department of Education of Massachusetts*, 471 U.S. 359, 105 S.Ct. 1996, 85 L.Ed.2d

---

**8.** The District cites to 34 C.F.R. § 300.454(a)(1), which states: "No private school child with a disability has an individual right to receive some or all of the special education and related services that the child would receive if enrolled in a public school."

385 (1985). In an earlier case, the Supreme Court also noted that:

> Each local education agency shall provide special educational services designed to meet the special educational needs of educationally deprived children residing in its district who are enrolled in private schools. Such educationally deprived children shall be provided *genuine* **opportunities to participate** therein consistent with the number of such educationally deprived children and the nature and extent of their educational deprivation.

*Wheeler v. Barrera*, 417 U.S. 402, 408, 94 S.Ct. 2274, 41 L.Ed.2d 159 (1974) (quoting then existing 45 C.F.R. § 116.119(a), now subsumed in 20 U.S.C. § 1400(c); 34 C.F.R. §§ 200.1–200.6; 200.11(b) and reaffirmed by *Cedar Rapids Community Sch. Dist. v. Garret F. by Charlene F.*, 526 U.S. 66, 119 S.Ct. 992, 143 L.Ed.2d 154 (1999)) (emphasis added). The Amendments do not change decades of educational jurisprudence reflecting the advancement of the rights of the disabled, but clarify certain points as related to unilaterally enrolled, private school students. While the parents of a child with disabilities unilaterally enrolled in a private school must bear the financial burden of tuition where the education agency has offered a free, appropriate education at public expense, that fact does not relieve the public education agency, under either federal or state law, from providing "special education and related services" to voluntarily placed private school students. Moreover, such aid, when provided, must be comparable to that received by exceptional children in public schools. The services offered must reflect a genuine opportunity to participate and the public education agency, by limiting the Veschis' school choice, fails to provide that "genuine opportunity." When exceptional private school children have a right to "comparable" or "equitable" services, school choice decisions should be made on factors other than the fear of total deprivation of those services. That said, we hold that Vincent may remain enrolled at St. Joseph's while simultaneously receiving special education services from the District. The order of the Special Education Due Process Appeals Review Panel is therefore reversed.

### ORDER

**NOW,** April 3, 2001, the order of the Special Education Due Process Appeals Review Panel in the above-captioned matter is hereby reversed.