**LOWER MERION SCHOOL DISTRICT, Petitioner**

v.

**Student DOE and Parents Doe, Respondents.**

Commonwealth Court of Pennsylvania.

Argued March 3, 2005.

Decided June 14, 2005.

Reargument Denied Aug. 12, 2005.

below may author an opinion addressing those claims.

Kenneth A. Roos, Blue Bell, for petitioner.

David G.C. Arnold, Conshohocken, for respondents.

BEFORE: SMITH–RIBNER, Judge, FRIEDMAN, Judge (P), and McCLOSKEY, Senior Judge.

OPINION BY Judge FRIEDMAN.

In a case of first impression, the Lower Merion School District (District) petitions for review of the August 17, 2004, order of the Department of Education, Bureau of Special Education (Department), which ordered the District to provide occupational therapy services to Student Doe [1] pursuant to section 504 of the Rehabilitation Act of

---

1. Student Doe and his parents were granted permission to intervene as party Respondents by order of January 12, 2005.

1973 (Section 504), 29 U.S.C. § 794. We affirm.

Student Doe is a six-year old student residing in the District with his parents (Parents Doe). Parents Doe requested that their child be evaluated to assess his needs and determine whether he was entitled to services under the Individuals with Disabilities Education Act (IDEA), 20 U.S.C. §§ 1401–1487, and/or under Section 504. Following that evaluation, the District determined that Student Doe was not eligible for special education services under the IDEA and its Pennsylvania implementing regulations, set forth at 22 Pa. Code Chapter 14 (Chapter 14), but Student Doe was eligible to receive occupational therapy services under Section 504 and its Pennsylvania implementing regulations, set forth at 22 Pa.Code Chapter 15 (Chapter 15).[2] The District offered Parents Doe a Section 504 Service Agreement for Student Doe that included accommodations and services in the form of one thirty-minute session of direct occupational therapy per week and ongoing teacher consultation to follow through with the accommodations.

Parents Doe enrolled Student Doe for the 2004–05 school year in a full-day kindergarten program at an independent private school outside of the District, which offers only half-day kindergarten. However, Parents Doe requested that the District provide Student Doe with occupational therapy at a public school in the District, and Parents Doe dually enrolled Student Doe in the District so that he could receive this therapy. Parents Doe did not seek transportation costs to the public school nor private school tuition reimbursement.

The District refused to provide occupational therapy to Student Doe, asserting that, in order to receive Section 504 services, Student Doe must be attending a public school in the District. Subsequently, a Hearing Officer reviewed the matter; the specific legal issue presented was whether Student Doe is "entitled to receive services from the ... District under a Section 504 Service [Agreement] if he is dually enrolled and his parents bring him to a District facility to receive those services while he is attending an independent, private school." (R.R. at 4; Hearing Officer's decision at 2.)

After considering the arguments of both parties,[3] the Hearing Officer answered this question in the affirmative and issued a Department order, dated August 17, 2004, requiring the District to provide Student Doe with the occupational therapy services outlined in the Section 504 Service Agreement so long as he is dually enrolled and receives those services at a public school in the District. (R.R. at 12; Hearing Officer's decision at 10.) In doing so, the Hearing Officer relied on *Veschi v. Northwestern Lehigh School District*, 772 A.2d 469 (Pa.Cmwlth.) *appeal denied*, 567 Pa. 753, 788 A.2d 382 (2001), in which this court, in the IDEA/Chapter 14 context, considered a fact pattern almost identical to that presented here and ruled in favor of the student.

2. The District's evaluation determined Student Doe's disability to be spastic diplegia, difficulties with fine motor skills and visual motor delays. The parties do not dispute the results of the evaluation, Student Doe's need for occupational therapy or the level of services to be provided.

3. The parties presented the Hearing Officer with six stipulations of fact and two copies of the Section 504 Service Agreement. No witnesses were called to testify; instead, the parties argued their positions orally and through briefs submitted to the Hearing Officer.

In its petition for review of the August 17, 2004, order,[4] the District argues that the Hearing Officer erred as a matter of law in ruling that Section 504 requires a public school district to provide services to an otherwise eligible student enrolled in and attending a private school. The District acknowledges that, in *Veschi*, this court decided that *IDEA-eligible* students attending private schools were entitled to special education and related services from public schools. However, the District notes that no cases address whether public school districts must provide Section 504 services to *Section 504–eligible* students attending private schools. According to the District, because the purpose behind Section 504 and the IDEA differ and because there are critical differences between the express language of Section 504 and the IDEA, as well as substantial differences between their respective federal and state regulations, the reasoning in *Veschi*, when applied to this case, actually supports the conclusion that the District is *not* required to provide Student Doe with Section 504 services so long as Student Doe is attending a private school. We disagree.

## I. Statutory and Regulatory Law

Section 504 was enacted to promote, *inter alia*, the inclusion and integration of persons with disabilities into mainstream society. *See* 29 U.S.C. § 701; *J.D. ex rel. J.D. v. Pawlet School District*, 224 F.3d 60 (2d Cir.2000). To that end, Section 504 is "designed to eliminate discrimination on the basis of handicap in any program or activity receiving Federal financial assistance," 34 C.F.R. § 104.1, by providing in relevant part:

> No otherwise qualified individual with a disability in the United States ... shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under *any program or activity*[5] receiving Federal financial assistance ....

29 U.S.C. § 794(a) (emphasis added). In the field of education, Section 504 complements the IDEA. While the IDEA *requires* federally funded agencies to provide a free appropriate public education with special education and related services for eligible students,[6] Section 504 *prohibits* such agencies from discriminating against students with disabilities. *Pawlet*. However, the federal regulations promulgated under Section 504 adopt the IDEA language of free appropriate public education and *require* that:

> A recipient [of federal financial assistance] that operates a public elementary

---

4. Our scope of review is limited to determining whether an error of law was committed, whether constitutional rights were violated or whether necessary findings of fact are supported by substantial evidence. Section 704 of the Administrative Agency Law, 2 Pa.C.S. § 704.

5. Section 504 does not limit this to "public" programs or activities. Further, in relevant part, "the term 'program or activity' means *all* of the operations of ... a local educational agency ... or other school system ... or other private organization ... which is principally engaged in the business of providing education...." 29 U.S.C. § 794(b)(2)(B) and

(b)(3)(A)(ii); 34 C.F.R. § 104.3(k)(2)(ii) and (k)(3)(i)(B) (emphasis added).

6. The purpose of the IDEA is "to ensure that all children with disabilities have available to them a free appropriate public education that emphasizes special education and related services designed to meet their unique needs and prepare them for employment and independent living." 20 U.S.C. § 1400(d)(1)(A). The IDEA also specifically requires that states provide for the participation of private school children with disabilities in the special education programs developed under the IDEA. 20 U.S.C. § 1412(a)(10)(A)(i).

or secondary education program or activity shall provide *a free appropriate public education* to each qualified handicapped person who is in the recipient's jurisdiction, regardless of the nature or severity of the person's handicap.

34 C.F.R. § 104.33(a) (emphasis added). Section 504's federal regulations define an "appropriate education" as "the provision of regular or special education *and related aids and services* that (i) are designed to meet *individual educational needs of handicapped persons* as adequately as the needs of nonhandicapped persons are met." 34 C.F.R. § 104.33(b)(1) (emphasis added.) Further, the provision of a "free education" means provision of educational *and related services without cost* to the handicapped person or to his or her parents or guardian except for those fees that are imposed on non-handicapped persons or their parents or guardian.[7] 34 C.F.R. § 104.33(c)(1). However, if a recipient of federal funds has made a free appropriate public education available to a handicapped person, and the person's parents choose to place the person in a private school, the recipient is not required to pay for the person's education in the private school. 34 C.F.R. § 104.33(c)(4).

Importantly, Parents Doe do not seek reimbursement for Student Doe's private school tuition; they do not ask that any Section 504 services be provided for Student Doe at the private school; and they assume the cost of transporting Student Doe to a District facility for the services. What Parents Doe do seek is to obtain what has been recognized as a crucial element of Student Doe's "appropriate education," i.e., "related services" for free.[8] However, the District maintains that, because Parents Doe do not choose to have Student Doe receive a free "regular education" at the District, Student Doe is not entitled to receive the free "related services" mandated by Section 504. In doing so, the District attempts to distinguish between substantive classes and "related services," acknowledging that Student Doe's dual enrollment permits him to avail himself of the former at a District facility, but rejecting the idea that Student Doe may dual enroll in the District to take advantage of the latter.[9] As stated, however,

7. Free education "may consist either of the provision of free services or, if a recipient places a handicapped person or refers such person for aid, benefits, or services not operated or provided by the recipient as its means of carrying out the requirements of this subpart, of payment for the costs of the aid, benefits or services." 34 C.F.R. § 104.33(c)(1).

8. The District points out that, unlike the federal IDEA regulations, the federal regulations promulgated under Section 504 contain no specific provisions governing the evaluation of private school children and the amount of funds that a district must make available for special education. *Cf.* 34 C.F.R. § 300.450–300.456; 34 C.F.R. § 104.1–104.39. According to the District, Section 504 regulations do not require public school districts to provide services to private school students because Section 504 "recipients" of federal funding include private schools. 34 C.F.R.

§§ 104.3(f), 104.39. However, the District fails to consider that not every private school receives federal funding. Moreover, a private school that receives federal funding can charge to provide services, 34 C.F.R. § 104.39(b); therefore, even if Parents Doe could obtain Section 504 services for Student Doe from the private school, those services might not be free.

9. Dual enrollment is permitted under section 502 of the Public School Code of 1949 (School Code), Act of March 10, 1949, P.L. 30, *as amended,* 24 P.S. § 5–502. Section 502 of the School Code provides: "In addition to the elementary public schools, the board of school directors in any school district may establish, equip, furnish, and maintain the following additional schools or departments for the education and recreation of persons residing in said district ... namely: ... Schools for physically and mentally hand-

section 504's federal regulations define "appropriate education" to include *both* "regular or special education *and* related aids and services." 34 C.F.R. § 104.33(b)(1) (emphasis added). Therefore, we reject the distinction made by the District as having no basis in law.

In addition, Chapter 15 regulations, 22 Pa.Code §§ 15.1–15.11, setting out the procedures for implementation of Section 504 in Pennsylvania, require only that a child be *enrolled* in the district from which he seeks services and does *not* require that the student *attend* classes at a district public school in order to receive those services. Specifically, the state regulations require that:

> A school district shall provide each protected handicapped student *enrolled* in the district, without cost to the student

or family, those related aids, services or accommodations which are needed to afford the student equal opportunity to participate in and obtain the benefits of *the* school program and extracurricular activities without discrimination and to the maximum extent appropriate to the student's abilities.

22 Pa.Code § 15.3 (emphasis added). As previously indicated, Student Doe is *enrolled* in the District.

Nevertheless, focusing on the use of the definite article "the" rather than the indefinite article "a," the District asserts that Section 504 only requires a recipient of federal funds to provide services that are necessary to allow a Section 504–eligible person meaningful access to the *recipient's* program, not to *any* school program.[10]

---

icapped ... *No pupil shall be refused admission to the* **courses** *in these additional schools or departments, by reason of the fact that his elementary or academic education is being or has been received in a school other than a public school."* 24 Pa.C.S. § 5–502 (emphasis added). *See also* 22 Pa.Code § 11.33. The District points out that Student Doe has not sought admission to "courses" of the District; rather, his family seeks dual enrollment solely for provision of a Section 504 "service."

**10.** The District points out that state regulations governing the IDEA provided that "Exceptional students and eligible young children who attend nonpublic schools shall be afforded equal opportunity to participate in special education services and programs and early intervention services and programs." 22 Pa. Code § 14.41(e) (now reserved). Further, the District notes that, in *Veschi*, the court relied on 22 Pa.Code § 14.41(e) to find that the school district was required to make special education services available to IDEA-eligible students attending private schools. The District reasons that, if the State Board intended for districts to provide Section 504 services to private school students, it would have included the same language used for 22 Pa.Code § 14.41(e) in Chapter 15. Therefore, by failing to use such language and by requiring that districts only provide services needed "to afford the student equal opportunity to partic-

ipate in and obtain the benefit of *the* school program," the Board expresses its intent that a district need only provide services necessary to access the district's school program, not to *any* school program.

According to the District, the Hearing Officer's contrary interpretation would result in unreasonable and absurd consequences where, although Section 504 governs private schools receiving federal funds, public school districts nevertheless would be required to determine to what extent modifications or services are needed to make another school's educational program accessible and to make such services or modifications available. The District warns that, depending upon a student's particular disabilities, such a reading of Section 504's requirements could result in school districts paying to modify private school buildings or provide staff in private schools. While this may be a valid argument in another case, such matters simply are not at issue in the present matter. Indeed, given the requested remedy, all the authorities cited by the District in support of its position are inapplicable. These authorities either deal with a request for reimbursement for educational services provided at non-public schools or with a district being asked to provide services at a non-public school, situations that do not exist here.

The District argues that, because the service requested by Parents Doe is not a means to permit Student Doe access to the *District's* program, Section 504 does not require the District to provide that service.[11]

While we do not dismiss the District's argument out of hand, we do note, as did the Hearing Officer, that the wording in the state regulation "is 'enrolled' and not 'attending.' It is also noted that the regulation's wording is 'the school program' and not 'the *public* school program.' "[12] (Hearing Officer's decision at 7 (emphasis added)). Indeed, as the Hearing Officer pointed out, it is the District's interpretation of this regulation that is at the very core of this case, and we must reject that interpretation.

We recognize that there are differences between Section 504 and the IDEA, and Section 504 does not specifically provide for services to private school students in the way that the IDEA does. However, neither Section 504, nor the applicable federal or state regulations promulgated to effectuate Section 504, bar private school students from dual enrollment in a public school district in order to receive Section 504 services at a district facility.

To the contrary, with its emphasis on the needs of the student, the mandate in Section 504 and its federal implementing regulations clearly require that a public school district provide a "free appropriate public education" to *each* qualified student in its jurisdiction. 34 C.F.R. § 104.33(a). Moreover, an appropriate education constitutes "provision of regular or special education and related aids and services that (i) are designed to meet the *individual needs* of handicapped persons." 34 C.F.R. § 104.33(b)(1) (emphasis added). Here, the District's interpretation would frustrate the purpose of Section 504 in that it

**11.** In support of this position, the District also relies on the Department's Basic Education Circular, administrative guidelines wherein the Department has offered its interpretation of the requirements of Chapter 15. Those guidelines state in pertinent part:

> If the protected handicapped student is attending only the nonpublic school, the school district of residence bears no responsibility to provide aids, services or accommodations *within the nonpublic school.* Chapter 15 is aimed at ensuring equal opportunity to participate in and benefit from the public school district program. If the student is attending only the nonpublic school, a public school district's provisions of a Chapter 15 service, such as catheterization or wheelchair accessibility, would not foster equal opportunity to participate in the public school district's program.
>
> If a nonpublic school student is receiving some educational services from the public school district, however, the school district's Chapter 15 obligations apply to the extent that equal opportunity must be provided with respect to that portion of the student's educational program.

*See* Pennsylvania Department of Education, Basic Education Circular "Services to Non-

public School Students" 22 Pa.Code Chapter 15 (Issued: July 1, 2001) (emphasis added). We reiterate that Parents Doe do not seek to have the District provide services for Student Doe "within the nonpublic school." Moreover, as the Hearing Officer correctly noted, these "guidelines" are exactly that; they are not binding law.

**12.** Compare 34 C.F.R. § 104.39, which states that "[a] recipient that provides *private* elementary or secondary education may not, on the basis of handicap, exclude a qualified handicapped person if the person can, with minor adjustments, be provided an appropriate education ... within *that recipient's* program or activity." (Emphasis added.) Moreover, the Pennsylvania regulations use the nomenclature "protected handicapped student" instead of "individual with a disability" in describing those entitled to Section 504 benefits, and define "protected handicapped student" as a "student who ... [h]as a physical or mental disability which substantially limits or prohibits participation in or access to an aspect of *the student's* school program." 22 Pa.Code § 15.2.

would exclude Student Doe from receiving those services that have been determined to be part of a free appropriate education for him.

Because Section 504 is remedial legislation, *M.A. ex rel. E.S. v. State–Operated School District of the City of Newark*, 344 F.3d 335 (3d Cir.2003), and should be interpreted broadly to effectuate its purpose, *see Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 119 S.Ct. 2139, 144 L.Ed.2d 450 (1999), we are not persuaded by the District's argument that the distinctions between the IDEA and Section 504 demand a different result than that reached by the Hearing Officer. The fact that the state regulations employ narrower language than that used in the federal regulations to implement Section 504 is of no moment because the regulation cannot be interpreted to rewrite or contravene its enabling legislation.[13] *See Lisa H. v. State Board of Education*, 67 Pa.Cmwlth. 350, 447 A.2d 669 (1982), *aff'd*, 502 Pa. 613, 467 A.2d 1127 (1983); *Barr v. Department of Public Welfare*, 62 Pa.Cmwlth. 211, 435 A.2d 678 (1981).

## II. Caselaw Analysis

Courts in the Third Circuit have consistently applied an IDEA/Chapter 14 analysis when deciding cases under Section 504/Chapter 15. Therefore, we also agree with Parents Doe that, to resolve the present matter, it is entirely appropriate to review caselaw decided under the IDEA. In *W.B. v. Matula*, 67 F.3d 484, 492–93 (3d Cir.1995), the court stated:

> There appear to be few differences, if any, between IDEA's affirmative duty and [Section] 504's negative prohibition. Indeed, the regulations implementing [Section] 504 adopt the IDEA language, requiring that schools which receive or benefit from federal financial assistance 'shall provide a free appropriate public education to each qualified handicapped person who is in the recipient's jurisdiction.' 34 C.F.R. § 104.33(a).

*See also Ridgewood Board of Education v. N.E. ex rel. M.E.*, 172 F.3d 238 (3d Cir. 1999). In addition, courts in the Eastern District of Pennsylvania have consistently followed the holdings in *Matula* and *Ridgewood*. *See, e.g., Susavage v. Bucks County Schools Intermediate Unit No. 22*, 2002 WL 109615 (No. Civ. A. 00–6217, E.D. Pa., filed Jan. 22, 2002); *Christen G. ex rel. Louise G. v. Lower Merion School District*, 919 F.Supp. 793 (E.D.Pa.1996).

The District contends, however, that the courts have recognized that children eligible for Section 504 services are not entitled to all of the protections afforded children eligible under the IDEA, citing *Molly*

---

**13.** In this regard, we note that the state regulations provide that:

> [t]he full description of substantive responsibilities of school entities is set forth in Section 504 and the Section 504 regulations at 34 CFR Part 104 (relating to non-discrimination on the basis of handicap in programs and activities receiving or benefiting from federal financial assistance) and not in this chapter.... It is not the purpose of this chapter to preempt, create, supplant, expand or restrict the rights or liabilities of protected handicapped students or school entities beyond what is contemplated by Section 504, the Section 504 regulations at 34 CFR Part 104 or another law.

22 Pa.Code § 15.11(a), (c). Moreover, the state regulations clearly require the District to educate Student Doe and to provide that education, with *all* that this term includes, free of charge. See 22 Pa.Code § 11.11, which provides that "[a] school age child is entitled to attend the public schools of the child's district of residence," without limiting that entitlement solely to "class" attendance, and 22 Pa.Code § 12.1(a), which provides that "[a]ll persons residing in this Commonwealth between the ages of 6 and 21 years are entitled to a free and *full* education in the Commonwealth's public schools." (Emphasis added.)

*L. ex rel. B.L. v. Lower Merion School District,* 194 F.Supp.2d 422 (E.D.Pa.2002), a case in which the District was a party.[14] In *Molly L,* the parents of a disabled child brought an action against the District challenging the appropriateness of a proposed Section 504 Service Agreement for their child and seeking tuition reimbursement for her enrollment in private school. The court granted the District's motion for summary judgment, concluding that, because the District established that its Section 504 Service Agreement conferred the "meaningful benefit" embodied in Section 504's free appropriate public education requirement, the parents were not entitled to reimbursement of the private school tuition. As previously stated, Parents Doe did not enroll Student Doe in private school because they were dissatisfied with the Section 504 Service Agreement proposed for Student Doe, and they do not seek tuition reimbursement on that basis.

In fact, to the extent that the District's relies on *Molly L* to support the position that Section 504 cases cannot be resolved by reference to the IDEA, that reliance is misplaced. The court in *Molly L.* granted summary judgment in the District's favor; however, far from rejecting application of an IDEA analysis in that Section 504 case, the court cited *Matula* and *Ridgewood* and noted that "[t]he substantive requirements of [Section 504] in the education context are equivalent to the requirements set forth in the [IDEA]. . . . Thus, although IDEA does not apply in this case, the Court's analysis is informed by IDEA and cases interpreting that statute." *Molly L.,* 194 F.Supp.2d at 426–27 (citations and footnotes omitted). We agree that the analysis used in cases interpreting the IDEA can be utilized in Section 504 cases.

## III. *Veschi*

The issue presented here, although newly considered in the context of Section 504, has been resolved previously in the context of the IDEA. In *Veschi,* the parents of a child with speech and language disabilities appealed a Department decision holding that the public school district was not obligated to provide speech and language therapy services to the child while he was enrolled at a private, parochial school. Like Parents Doe, the parents in *Veschi* did not seek tuition reimbursement for their son's private school education and did not seek to have the therapy provided at the non-public school; rather, they requested provision of services to their son at the school district facility while he still attends his parochial school (dual enrollment). The parents in *Veschi* argued that they had a constitutionally protected right to decide where their child went to school, *see Pierce v. Society of the Sisters of the Holy Names of Jesus and Mary,* 268 U.S. 510, 45 S.Ct. 571, 69 L.Ed. 1070 (1925), and *Wisconsin v. Yoder,* 406 U.S. 205, 92 S.Ct. 1526, 32 L.Ed.2d 15 (1972), and they asserted that where the school district had determined that their son needed certain IDEA-related services, the school district had an obligation under the IDEA to provide those services at the public school

14. In *Molly L,* the court discussed the differences between the IDEA and Section 504 in a footnote, noting that, while the two laws have a significant overlap in language and purpose, the IDEA and Section 504 differed in the scope of their coverage. The court explained that students eligible for services under the IDEA (those who need special education because of their disabilities) also are covered by the Section 504 prohibitions against discrimination based on disability, but students covered only by Section 504 (those who are disabled but do not require special education) are not entitled to all the rights and protections enumerated in the IDEA. Therefore, Section 504 would include more students because of the qualifying criteria of the IDEA.

without requiring their son to forego his private school enrollment.

This court agreed and held that a private school student can be dually enrolled in order to receive IDEA-related services provided at a district school that would be conducting those services for public school children. The court noted that the IDEA was intended to provide handicapped children both an appropriate education and a free education, and the IDEA should not be interpreted to defeat one or the other of these objectives. *Veschi (citing School Committee of Town of Burlington v. Department of Education of Massachusetts,* 471 U.S. 359, 105 S.Ct. 1996, 85 L.Ed.2d 385 (1985)).

Here, in ruling in favor of Student Doe, the Hearing Officer relied on *Veschi,* quoting the following language from that case.

> While the parents of a child with disabilities unilaterally enrolled in a private school must bear the financial burden of tuition where the education agency has offered a free, appropriate education at public expense, that fact does not relieve the public education agency, under either federal or state law, from providing 'special education and related services' to voluntarily placed private school students. Moreover, such aid, when provided, must be comparable to that received by exceptional children in public schools. The services offered must reflect a genuine opportunity to participate and the public education agency, by limiting the Veschis' school choice, fails to provide that 'genuine opportunity.' When exceptional private school children have a right to 'comparable' or 'equitable' services, school choice decisions should be made on factors other than the fear of total deprivation of those services. That said, we hold that Vincent may remain at St. Joseph's while

simultaneously receiving special education services from the District.

*Id.* at 475.

We agree with the Hearing Officer that this analysis, although reached in the context of the IDEA in *Veschi,* applies with equal force in this Section 504 case. Accordingly, we affirm.

## ORDER

AND NOW, this 14th day of June, 2005, the order of the Department of Education, Bureau of Special Education, dated August 17, 2004, is hereby affirmed.

DISSENTING OPINION BY Judge SMITH–RIBNER.

I respectfully dissent from the majority's decision to affirm the order of the Department of Education Hearing Officer, Bureau of Special Education, which directed the Lower Merion School District to provide occupational therapy services to Student Doe pursuant to Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794 (Section 504). The majority disagrees with the School District's decision, based on a Section 504 evaluation, that the Student was ineligible for services under the Individuals with Disabilities Education Act (IDEA), 20 U.S.C. § 1401–1487, but instead was eligible for accommodations and direct occupational therapy to be provided at the Student's home school in the District under a Section 504 "Service Agreement," *see* 22 Pa.Code Chapter 15, which the Parents rejected.

The Hearing Officer and the majority rely on *Veschi v. Northwestern Lehigh School Dist.* 772 A.2d 469 (Pa.Cmwlth. 2001), which interpreted the IDEA but not Section 504. In any event, *Veschi* is no longer good law since 22 Pa.Code § 14.41(e), cited and followed in *Veschi,* was repealed in 2001 and new regulations

were adopted following revisions to federal regulations after IDEA amendments.

The District offered the Parents the Service Agreement that included accommodations and services involving one 30-minute session per week of direct occupational therapy to be delivered at the Student's home school in the School District, along with teacher follow-up consultation. The Parents rejected the agreement because they had enrolled the Student in a full-time kindergarten program in an independent private school outside of the School District for 2004–2005. They nonetheless requested the School District to provide the occupational services at the School District, which offers half-day kindergarten. The Parents dually enrolled the Student in the School District so that he could receive the direct occupational therapy, but the School District refused because the child must be enrolled in a public school in the School District to receive Section 504 services.

The majority has recognized that differences exist between Section 504 and the IDEA requirements and, more importantly, that Section 504 does not specifically provide for services to private school students in the same manner in which they are provided under the IDEA. Notwithstanding this recognition, the majority adopts the Hearing Officer's conclusions based upon his application of the IDEA analysis in *Veschi*, where this Court addressed whether an IDEA-eligible student attending private school was entitled to special education and related services from the public school district in which the child resided. In holding that the private school student was entitled to services the Court held as follows:

> While the parents of a child with disabilities unilaterally enrolled in a private school must bear the financial burden of tuition where the education agency has offered a free, appropriate education at public expense, that fact does not relieve the public education agency, under either federal or state law, from providing 'special education and related services' to voluntarily placed private school students. Moreover, such aid, when provided, must be comparable to that received by exceptional children in public schools. The services offered must reflect a genuine opportunity to participate and the public education agency, by limiting the Veschis' school choice, fails to provide that 'genuine opportunity.' When exceptional private school children have a right to 'comparable' or 'equitable' services, school choice decisions should be made on factors other than the fear of total deprivation of those services. That said, we hold that Vincent may remain at St. Joseph's while simultaneously receiving special education services from the District. The order of the Special Education Due Process Appeals Review Panel is ... reversed.

*Id.*, 772 A.2d at 475. The Court reached its decision in *Veschi* based upon an analysis of the IDEA, and it noted the provision in 22 Pa.Code § 14.41(e) that the student must receive "equal opportunity to participate" in the public school district's specialized educational assistance program. As noted above, Section 14.41(e) has been repealed; thus the underlying basis for *Veschi* is no longer valid.

Section 504 provides in relevant part:

> No otherwise qualified individual with a disability in the United States, as defined in section 705(20) of this title, shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity

conducted by any Executive agency or by the United States Postal Service.

As the School District observed, under *J.D. v. Pawlet School District,* 224 F.3d 60, 70 (2d Cir.2000), Section 504 requires the recipients of federal funds to offer 'reasonable' accommodations to those individuals with disabilities to ensure their meaningful access to the recipient's federally funded program, which differs from the purposes of the IDEA to ensure that all children suffering disabilities have available to them a free and appropriate public education emphasizing special education and related services designed to meet their unique needs and to prepare them for employment and independent living. 20 U.S.C. § 1400(d)(1)(A). Moreover, children eligible for Section 504 services are not entitled to all of the protections afforded to children eligible under the IDEA. *Molly L. v. Lower Merion School District,* 194 F.Supp.2d 422 (E.D.Pa.2002). *Also see, e.g.,* 34 C.F.R. § 300.454(a)(1) and 20 U.S.C. § 1412(a)(10)(a). Further, nothing in Section 504 imposes an obligation on recipients of federal funds to provide services to private school students not attending courses or classes in the public schools.

The State Board of Education promulgated regulations governing rights of students eligible for services under Section 504 in 22 Pa.Code Chapter 15 and promulgated regulations governing rights of students under the IDEA in 22 Pa.Code Chapter 14. Regulations governing the IDEA provide: "Exceptional students and eligible young children who attend nonpublic schools shall be afforded equal opportunity to participate in special education services and programs and early intervention services and programs." 22 Pa.Code § 14.41(e). As stated, *Veschi* relied upon the "equal opportunity to participate" requirement under Section 14.41(e), which was repealed and was no longer in effect at the time of the Hearing Officer's decision in this case. In addition, the State Board adopted new regulations in June 2001, after revisions to federal regulations based on amendments to the IDEA, which replaced the "equal opportunity to participate" requirement with a funding formula based upon the amount of funds expended by the local educational agency for provision of services to children with disabilities enrolled in private school. *See* 22 Pa.Code § 14.102(a)(2)(xix), incorporating by reference federal regulations at 34 C.F.R. 300.450–300.462.

As for the majority's contention that the Parents' dual enrollment of the Student does not require that he actually attend classes in the School District, I note the provision of Section 502 of the Public School Code of 1949, 24 P.S. § 5–502, that no student *"shall be refused admission to the courses"* in these additional schools or departments by reason of the fact that his elementary or academic education is being or has been received in a school other than a public school. The Student has not sought admission to *"courses"* of the School District; his Parents have sought dual enrollment for the sole purpose of obtaining occupational therapy services from the School District. Hence, for purposes of Section 504, the Hearing Officer erred in ruling that the Student was properly dual enrolled in his private school and in the School District and therefore entitled to receive Section 504 services. Pursuant to *J.D. v. Pawlet School District,* Section 504 requires the School District as a recipient of federal funds to provide services if they are necessary to permit an eligible individual meaningful access to the School District's programs. The services requested by the Parents here are not intended as a means to permit meaningful access by the Student to School District programs.

Additionally, the majority and the Hearing Officer discounted the Pennsylvania Department of Education's interpretation of the requirements of Chapter 15 set forth in its guidelines in pertinent part as follows:

If the protected handicapped student is attending only the nonpublic school, the school district of residence bears no responsibility to provide aids, services or accommodations within the nonpublic school. Chapter 15 is aimed at ensuring equal opportunity to participate in and benefit from the public school district program. If the student is attending only the nonpublic school, a public school district's provisions of a Chapter 15 service, such as catheterization or wheelchair accessibility, would not foster equal opportunity to participate in the public school district's program.

If a nonpublic school student is receiving some educational services from the public school district, however, the school district's Chapter 15 obligations apply to the extent that equal opportunity must be provided with respect to that portion of the student's educational program.

Pennsylvania Department of Education, Basic Education Circular "Services to Nonpublic School Students" 22 Pa.Code Chapter 15 (Issued: July 1, 2001). I agree with the School District that this Court may not ignore the interpretation of the Education Department, which should be afforded some deference by the Court particularly in this case of first impression. I further agree that the Hearing Officer improperly disregarded the Department's interpretation and that he erroneously relied instead on the holding in *Veschi,* which is now of dubious value.

Because the Student here was voluntarily enrolled in a private school by his Parents, he does not have the same rights to special education and related services required to be provided under Section 504 to children attending public schools within the School District. Inasmuch as the Hearing Officer relied on *Veschi* to conclude that the Student was permitted to be dual enrolled in the School District, although not attending any courses or classes there, and to receive Section 504 services, the Hearing Officer has committed an error of law. Accordingly, I would reverse the Hearing Officer's decision and uphold the decision of the School District to deny Section 504 services to the Student because he is now enrolled in a private school.