

2007 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

3-22-2007

# Lauren W. v. DeFlaminis

Precedential or Non-Precedential: Precedential

Docket No. 05-3774

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2007

Recommended Citation

"Lauren W. v. DeFlaminis" (2007). *2007 Decisions.* Paper 1378.
http://digitalcommons.law.villanova.edu/thirdcircuit_2007/1378

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2007 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————

Nos. 05-3774, 05-4008, 05-4009

———————

LAUREN W., BY AND THROUGH HER PARENTS,
JEAN AND JAMES W.; JEAN W.; JAMES W.,
ON THEIR OWN BEHALF,

Appellants in No. 05-3774

v.

JOHN A. DEFLAMINIS, DR., IN HIS INDIVIDUAL
CAPACITY; KITTY LUGAR, DR., IN HER INDIVIDUAL
CAPACITY; RADNOR TOWNSHIP SCHOOL DISTRICT,

Appellants in Nos. 05-4008 & 05-4009

———————

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civ. No. 03-cv-01526)
District Judge: Honorable Legrome D. Davis

———————

Argued December 13, 2006

BEFORE: FISHER, CHAGARES and GREENBERG,
Circuit Judges

(Filed: March 22, 2007)

———————

1

Stephen G. Rhoads
Catherine M. Reisman (argued)
Katherine Skubecz
Montgomery, McCracken, Walker & Rhoads
123 South Broad Street
Philadelphia, PA 19109

   Attorneys for Appellants in No. 05-3774
   and Appellees in No. 05-4008 and No. 05-4009

Ellis H. Katz (argued)
Sweet, Stevens, Tucker & Katz
331 Butler Avenue
P.O. Box 5069
New Britain, PA 18901

   Attorneys for Appellees in No. 05-3774 and
   Appellants in No. 05-4008 and No. 05-4009

───────────

OPINION OF THE COURT

───────────

GREENBERG, Circuit Judge.

## I. INTRODUCTION

This matter comes on before the court on an appeal and cross-appeals from orders the district court entered on June 3, 2005, and July 21, 2005, which became final upon entry of judgment on August 1, 2005, in this case arising in a special education context. See Lauren W. v. DeFlaminis, Civ. No. 03-1526, 2005 WL 1353643 (E.D. Pa. June 1, 2005); Lauren W. v. DeFlaminis, Civ. No. 03-1526, 2005 WL 2989712 (E.D. Pa. July 20, 2005). The suit arose from long-lived and recurring disputes between the Radnor Township School District and the parents, James and Jean W., of a daughter, Lauren W. (collectively, appellants), entitled to and provided with a special

education by the school district.[1]  In addition to bringing this action against the school district, the appellants joined Dr. John DeFlaminis, the school district superintendent, and Dr. Kitty Lugar, its director of pupil services, as defendants in their individual capacities.  When we refer to the "District" we are referring to all three defendants unless the context of the reference is such that it is clear that we are referring only to the school district or the individuals, as the case may be.

One of the principal issues in dispute is whether the District is obligated to reimburse appellants for Lauren's private school tuition that they incurred after Lauren's parents unilaterally withdrew her from public school, and, if so, whether the District also must provide compensatory education for services it did not provide during Lauren's private school education.  Appellants' other main contention is that the District denied Lauren special education services in retaliation for their attempts to enforce Lauren's rights under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 et seq., and thus is liable in damages to the appellants for that reason.  The District has counterclaimed seeking to recover a portion of the private school tuition that it paid on Lauren's behalf.  Moreover, in its counterclaim the District appeals from an administrative decision requiring it to reimburse appellants for tuition they paid for other years.  For the reasons that follow, we will affirm the orders and judgment of the district court.

## II. FACTS AND PROCEDURAL HISTORY

The following historical and procedural events have taken the case to its present posture.  Lauren is a 20-year old student who resides within the Radnor Township School District.  She suffers from a variety of conditions that have effects entitling her to a free and appropriate education

---

[1]Because Lauren was a minor at the time appellants commenced this litigation, Lauren's parents sued on her behalf as well as on their own behalf.

3

("FAPE") pursuant to the IDEA. It is undisputed that the District is the local education agency responsible for providing a FAPE to Lauren.

Lauren attended private school until the fifth grade, but in 1996, when she was ten years old, she entered schooling programs that the District directly provided and attended Radnor Middle School through the seventh grade. Thereafter, however, Lauren's parents, apparently dissatisfied with the Individual Education Program ("IEP") that the District proposed, unilaterally placed her at the Hill Top Preparatory School ("Hill Top"), a private school in Rosemont, Pennsylvania, for the 1999-2000 school year, her eighth grade.

Lauren's parents paid the Hill Top tuition for the 1999-2000 school year but requested a special education due process hearing in which they could seek reimbursement from the District for that tuition. The parties, however, negotiated a settlement of that claim and consequently the hearing was discontinued. Under the settlement, the District agreed to pay the Hill Top tuition for the 1999-2000 school year and certain of her parents' attorney's fees in lieu of its obligation to provide a FAPE for that year. On the other hand, Lauren's parents waived all of their federal and state claims relating to Lauren's placement through the 1999-2000 school year. In accordance with its agreement, the District issued a check to appellants for $21,975 on November 15, 2000, to cover the 1999-2000 Hill Top tuition.[2]

By the time the District issued the tuition check, Lauren's ninth-grade (2000-2001) school year had begun. Lauren remained at Hill Top that year and her parents again paid her tuition and again sought reimbursement from the District. In November 2000 the school board approved reimbursement for

---

[2]In their statement of facts in their opening brief appellants contend that the District never properly authorized execution of the settlement agreement but they nevertheless do not contend in their argument that for this reason it is not valid. Indeed, as we will explain later, they contend that the District rescinded the agreement by not complying with it, thus suggesting that it initially was valid.

4

Lauren's ninth grade at Hill Top but from December 2000 until February 2002 the parties could not reach a final agreement with respect to the terms for the District to reimburse appellants for the tuition for the 2000-2001 school year because appellants would not agree to a waiver-of-rights clause for that year similar to the one in the 1999-2000 agreement. In particular, appellants objected to waiving Lauren's right to "related services"[3] beyond the Hill Top curriculum, as they believed that Lauren needed these services to meet her educational needs. The District, however, would not accept the agreement to fund the 2000-2001 Hill Top placement without the waiver clause. As the dispute continued, Lauren began the tenth grade at Hill Top with her parents paying the 2001-2002 tuition.

With resolution of the dispute over reimbursement of Lauren's parents for the 2000-2001 and 2001-2002 school years in limbo, the District on May 28, 2002, proposed an IEP for the 2002-2003 school year (eleventh grade). This IEP proposed placing Lauren in a public school Bridge Program. Appellants, however, were not satisfied with the proposed IEP and consequently sought a due process hearing to address their concerns.

Inasmuch as the District refused to fund the Hill Top placement pending due process review, on July 18, 2002, Lauren's parents filed an action in the district court petitioning for a judgment declaring that Hill Top was Lauren's "pendent placement" under 20 U.S.C. § 1415(j)[4] and seeking injunctive

---

[3]Under the IDEA a district must provide a FAPE which entails both "special education" and "related services." 20 U.S.C. § 1401(9). "The term 'related services' means transportation, and such developmental, corrective, and other supportive services . . . as may be required to assist a child with a disability to benefit from special education . . . ." Id. § 1401(26)(A). Related services include items such as speech and audiology services, psychological services, and physical and occupational therapy.

[4]Section 1415(j) states: "[D]uring the pendency of any proceedings conducted pursuant to this section, unless the State or local educational agency and the parents otherwise agree, the child shall

relief requiring the District to fund Lauren's placement at Hill Top until they resolved the dispute over the 2002-2003 tuition. This action was successful and the district court granted appellants the relief they sought. Lauren W. v. Bd. of Educ. of Radnor Twp. Sch. Dist., Civ. No. 02-4775, 2002 WL 32130764 (E.D. Pa. Sept. 12, 2002). On September 16, 2003, in further proceedings the district court clarified that the District's responsibility to pay Lauren's tuition at Hill Top extended to the 2003-2004 school year pending final judicial review as to the appropriateness of the IEP. Lauren W. v. DeFlaminis, Civ. No. 03-1526, 2003 WL 22387406 (E.D. Pa. Sept. 16, 2003). In compliance with the district court's pendency decisions, the District paid the Hill Top tuition for the 2002-2003 and 2003-2004 school years.

The parties engaged in an administrative due process hearing extending over five separate sessions from July 22, 2002, until October 22, 2002, relating to the years after the 1999-2000 school year. This hearing culminated in a hearing officer making the following determinations: (1) the 2000 settlement agreement barred litigation of claims that pre-dated the execution of the agreement; (2) the District was responsible for Lauren's Hill Top tuition for the 2000-2001 and 2001-2002 school years that appellants had advanced to Hill Top; (3) the proposed IEP for the 2002-2003 school year was appropriate; and (4) Lauren was not entitled to related services or compensatory education for the time she spent at Hill Top. Both parties appealed from the hearing officer's decision to the Pennsylvania Special Education Appeals Panel which, on January 22, 2003, affirmed the hearing officer's decision.

On March 11, 2003, appellants initiated the civil action leading to this appeal in the district court seeking review of the administrative decision (Count I); a declaratory judgment regarding Lauren's pendent placement (Count II); damages under 42 U.S.C. § 1983 for the District's alleged retaliation against them in violation of the First Amendment (Count III);

remain in the then-current educational placement of the child . . . ."

6

damages for retaliation in violation of section 504 of the Rehabilitation Act, 29 U.S.C. § 794(a) (Count IV); and claims pursuant to section 504 of the Rehabilitation Act and 42 U.S.C. § 1983 for the District's violation of its "child find" duty (Count V). The District answered and filed the two counterclaims that we already have described. The District predicated one counterclaim on an unjust enrichment theory in which it sought the return of a portion of the Hill Top tuition that it paid pursuant to one of the district court's orders to which we refer above. The District predicated its second counterclaim, constituting an appeal from the administrative decision awarding appellants reimbursement of the 2000-2001 and 2001-2002 Hill Top tuition, on the theory that the Hill Top placement was not appropriate. On October 19, 2004, the parties filed cross-motions for disposition of Count I of the complaint on the administrative record. The District also sought summary judgment on appellants' remaining counts.

On June 3, 2005, the district court upheld the administrative decision in all aspects. The court, however, deemed Count II of appellants' complaint seeking a declaratory judgment with respect to the expenses of Lauren's pendent placement to be moot because the court already had granted appellants all the relief they could obtain on that count and because Lauren no longer was a student at Hill Top. Further, the court granted the District's motion for summary judgment dismissing the retaliation claims in appellants' Counts III and IV brought under 42 U.S.C. § 1983 and the First Amendment and section 504 of the Rehabilitation Act, respectively, and dismissing the "child find" duty claim raised in Count V. Finally, the court requested that the District's counsel advise it as to the status of the District's counterclaims.

The parties subsequently filed cross-motions for summary judgment on the counterclaims and the district court on July 21, 2005, granted appellants' motion on them. Pursuant to Federal Rule of Civil Procedure 58, on August 1, 2005, the court entered judgment in favor of the District on Counts I, III, IV, and V and dismissed Count II of the complaint and entered judgment for appellants on the District's counterclaims. Thus, the district court disposed of all aspects of the complaint and counterclaims.

7

The parties have appealed and cross-appealed to this court from the court's orders of June 3, 2005, and July 21, 2005, and from the judgment of August 1, 2005. The parties do not, however, challenge the order dismissing Count II of the complaint as moot.

## III. JURISDICTION AND STANDARD OF REVIEW

This action arose pursuant to the IDEA, 42 U.S.C. § 1983, the First Amendment, and section 504 of the Rehabilitation Act of 1973. The district court had jurisdiction under 20 U.S.C. § 1415(i)(3)(A) and 28 U.S.C. §§ 1331, 1343(a)(3). We have jurisdiction over the appeal pursuant to 28 U.S.C. § 1291.

We exercise plenary review over orders granting summary judgment. Elliot & Frantz, Inc. v. Ingersoll-Rand Co., 457 F.3d 312, 318 (3d Cir. 2006). Thus, we will affirm those orders if our review reveals that "there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Id. (quoting Fed. R. Civ. P. 56(c)). In determining whether summary judgment is warranted, we review the facts in the light most favorable to the non-moving parties, id., and draw all reasonable factual inferences in their favor, Doby v. DeCrescenzo, 171 F.3d 858, 867 (3d Cir. 1999).

"If a non-moving party fails to make a showing sufficient to establish the existence of an element essential to that party's case on which it bears the burden of proof at trial, there is no issue as to a genuine issue of a material fact and thus the moving party is entitled to judgment as a matter of law." In re Ikon Office Solutions, Inc., 277 F.3d 658, 666 (3d Cir. 2002) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986)). "Moreover, a party will not be able to withstand a motion for summary judgment merely by making allegations; rather, the party opposing the motion must go beyond its pleading and designate specific facts by use of affidavits, depositions, admissions, or answers to interrogatories showing there is a genuine issue for trial." Id. (citing Celotex

8

Corp. v. Catrett, 477 U.S. 317, 324, 106 S.Ct. 2548, 2553 (1986)). "Only evidence sufficient to convince a reasonable factfinder to find all of the elements of [the] prima facie case merits consideration beyond the Rule 56 stage." Id. (internal quotation marks omitted).

We exercise plenary review over the legal conclusions the district court reached in our review of an administrative adjudication in IDEA cases. L.E. v. Ramsey Bd. of Educ., 435 F.3d 384, 389 (3d Cir. 2006); S.H. v. State-Operated Sch. Dist. of Newark, 336 F.3d 260, 269 (3d Cir. 2003). The district court, however, exercised a "modified de novo" standard of review of the factual findings in the administrative adjudication in this IDEA case giving those factual findings "due weight." See id. at 269-70. Consequently, the district court considered the findings in the administrative proceedings to be "prima facie correct," see id. at 270, and deferred to the hearing officer's credibility determinations. See id. We, in turn, review the district court's findings for clear error. See L.E., 435 F.3d at 389.

## IV. DISCUSSION

### A. Counts III & IV: Retaliation

Appellants argue that the District retaliated against them for enforcing Lauren's rights to a FAPE in violation of the First Amendment, a claim they assert under 42 U.S.C. § 1983, and in violation of section 504 of the Rehabilitation Act[5] by refusing to

[5]Section 504 of the Rehabilitation Act states:

> No otherwise qualified individual with a disability in the United States, . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . . .

9

release tuition reimbursement money unless they executed a settlement agreement containing a waiver-of-rights provision. The appellants further contend that the District retaliated against them by refusing to provide related services to Lauren while she was a student at Hill Top. Though appellants concede that eventually the District reimbursed them for the tuition money that they were due, they contend that the District's insistence that they execute the waiver nevertheless "placed them in a worse position for having engaged in protected activity," Holder v. City of Allentown, 987 F.2d 188, 196 (3d Cir. 1993), because of the time and expense spent litigating several suits they filed seeking an injunction to compel the funding.

The elements of a retaliation claim under 42 U.S.C. § 1983 predicated on the First Amendment and under the Rehabilitation Act are the same. In both cases plaintiffs must show (1) that they engaged in a protected activity, (2) that defendants' retaliatory action was sufficient to deter a person of ordinary firmness from exercising his or her rights, and (3) that there was a causal connection between the protected activity and the retaliatory action. See Thomas v. Independence Twp., 463 F.3d 285, 296 (3d Cir. 2006) (First Amendment); Estate of Smith v. Marasco, 318 F.3d 497, 512 (3d Cir. 2003) (First Amendment); Robinson v. Potter, 453 F.3d 990, 994 (8th Cir. 2006) (Rehabilitation Act); Weixel v. Bd. of Educ. of N.Y., 287

---

29 U.S.C. § 794(a). The anti-retaliation regulation implementing section 504 states:

> No recipient or other person shall intimidate, threaten, coerce, or discriminate against any individual for the purposes of interfering with any right or privilege secured by [the Act], or because he has made a complaint, testified, assisted, or participated in any manner in an investigation, proceeding or hearing . . . .

34 C.F.R. § 100.7(e).

F.3d 138, 148 (2d Cir. 2002) (Rehabilitation Act).[6] A defendant may defeat the claim of retaliation by showing that it would have taken the same action even if the plaintiff had not engaged in the protected activity. See Ambrose v. Twp. of Robinson, 303 F.3d 488, 493 (3d Cir. 2002).

This appeal does not turn on a question of whether appellants engaged in a protected activity or whether the District engaged in the conduct that the appellants ascribe to it,[7] but rather whether there was a causal relationship between the two. After all, if there was not a causal relationship then the District could not have engaged in its conduct in retaliation for appellants having engaged in a protected activity. To establish the requisite causal connection a plaintiff usually must prove either (1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing to establish a causal link. See Krouse v. American Sterilizer Co., 126 F.3d 494, 503-04 (3d Cir. 1997); Woodson v. Scott Paper Co., 109 F.3d 913, 920-21 (3d Cir. 1997). In the absence of that proof the plaintiff must show that from the "evidence gleaned from the record as a whole" the trier of the fact should infer causation. Farrell v. Planters Lifesavers Co., 206 F.3d 271, 281 (3d Cir. 2000).

A court must be diligent in enforcing these causation requirements because otherwise a public actor cognizant of the possibility that litigation might be filed against him, particularly in his individual capacity, could be chilled from taking action that he deemed appropriate and, in fact, was appropriate. Consequently, a putative plaintiff by engaging in protected activity might be able to insulate himself from actions adverse to him that a public actor should take. The point we make is not

---

[6]Weixel stated the requirements more expansively but its formulation does not change the substance of the requirements.

[7]The District does not deny that appellants in seeking to enforce Lauren's IDEA rights were engaging in a protected activity, or that it refused funding absent the waiver on which it insisted, or that it rejected appellants' claims for related services. Of course, the District denies that it had a retaliatory motive for engaging in its conduct.

11

theoretical as we do not doubt that public actors are well aware that persons disappointed with official decisions and actions frequently bring litigation against the actors responsible for the decisions or actions in their individual capacities, and the actors surely would want to avoid such unpleasant events.[8] Thus, it would be natural for a public actor to attempt to head off a putative plaintiff with the unwarranted expenditure of public funds. Courts by their decisions should not encourage such activity and, by enforcing the requirement that a plaintiff show causation in a retaliation case, can avoid doing so as they will protect the public actor from unjustified litigation for his appropriate conduct. In this regard we recognize that often public actors such as those in this case must make a large number of decisions in charged atmospheres thereby inviting litigation against themselves in which plaintiffs ask the courts to second guess the actors' decisions.

Appellants do not allege that the timing of the alleged retaliatory action can support an inference that their protected activity caused the District to engage in the so-called retaliatory action and, in any event, the timing of the District's actions cannot support such an inference because the District made its determinations with respect to Lauren at the time that it needed to do so. Rather, appellants contend that "the record as a whole" creates an inference that the District retaliated against them. Appellants' br. at 29. The district court rejected this argument as it held that there was no causal connection between appellants' assertion of Lauren's rights and the District's insistence on a waiver, refusal to release tuition money, and rejection of appellants' requests for related services. Instead, the court held that the evidence showed that the District insisted on the waiver because it was not in a position to ensure that the private school program at Hill Top would comply with the IDEA as the Commonwealth of Pennsylvania had not approved it. The District's concern in this regard was understandable because Lauren's parents unilaterally placed her in Hill Top, which was a

---

[8]We also are aware that in employment situations employees sometimes threaten to bring retaliation actions if the employer takes adverse action with respect to them.

non-approved private school.[9]  Therefore the District believed that it did not have the authority or ability to supervise the private school program or recognize any need for related services.

Appellants argue that the district court erroneously concluded that there was no genuine issue of material fact with respect to the causal link between the protected activity and the District's alleged retaliatory conduct.  In particular, they believe that the court overlooked or undervalued five particular categories of evidence in reaching its decision.  We will address those arguments in turn.

### 1. Direct evidence

Appellants first argue that the district court wrongly overlooked direct evidence that the District's refusal to fund the pendent placement without a waiver of rights was related causally to their enforcement of Lauren's rights.  In support of this argument appellants point to what they regard as the District's admissions stating that it would not consent to the funding of the pendent placement without a satisfactory waiver of rights.  These "admissions," however, were not direct evidence, or, indeed, evidence at all with respect to the relevant inquiry regarding causation, which is whether the District's refusal to fund the placement and insistence on the waiver provision was connected causally to appellants' enforcement actions.  Rather, appellants only have produced evidence that the District refused to fund the placement because appellants would not consent to the waiver of rights.  We are at a total loss to comprehend how this evidence could support appellants' causation argument for the District was in an ongoing dispute with the appellants and wanted to protect itself from their possible claims.  Appellants' argument amounts to nothing more than an assertion that a party to a controversy that resists demands against it is engaging in retaliatory conduct by doing

---

[9]It appears that even though the Commonwealth had not approved Hill Top, at least with respect to Lauren, it was a very competent provider of the services it rendered.

13

so. If we permitted a trier of the facts to accept appellants' view of the so-called direct evidence we would allow it to conclude that when parties are in a dispute and are discussing its resolution, one side, in advancing its position is negotiating, and the other is retaliating. We will not place our imprimatur on such an unbalanced view.

## 2. Disparate treatment

Appellants believe that the district court erred in disregarding evidence showing that another student was placed in a private school at the District's expense and was provided with related services but nevertheless was not compelled to sign a waiver. Lauren W., 2005 WL 1353643, at *21-22. The district court did not find the comparison useful because the so-called similarly-situated student was placed in the private school in accordance with a provision in an IEP and not, as in the case of Lauren, as the result of a settlement agreement following a unilateral placement.

Plainly the district court was correct. The comparison between the two students did not have evidentiary value on the retaliation issue as they were not similarly situated. A student placed in a private school pursuant to an IEP is there by reason of a bilateral agreement between the parties in which they agree that the placement satisfied the requirements of a FAPE. Accordingly, in such circumstances a school district would not need a waiver of rights or a waiver of related services in addition to those provided for in the IEP. In contrast, in Lauren's situation her parents unilaterally placed her in the non-approved private school, and because the District's supervision was inhibited and it could not guarantee the satisfaction of the conditions of a FAPE, the District sought to insulate itself from liability or further educational obligations by obtaining the waiver. Thus, the motivation for a request for a waiver in one situation but not the other arising in the private school placement context was entirely justified and cannot fairly be regarded as being related to Lauren's parents having engaged in a protected activity. Clearly, appellants have failed to isolate the relevant variable and thus the comparison between the students has no evidentiary value on the nexus issue.

14

### 3. Individual appellees' deposition testimony

Third, appellants believe Drs. DeFlaminis's and Lugar's testimony raises a genuine issue of material fact on the retaliatory animus issue. Dr. DeFlaminis testified at his deposition that lawsuits in special education have become a "waste land" because of their complexity requiring advice of counsel for compliance. App. at 314. Moreover, he viewed the litigious nature of the parents in the Radnor Township School District as "outrageous and heinous." App. at 321. Finally, he stated that he wished that his handicapped son for whose entire education Dr. DeFlaminis had paid "had had the benefit of this counsel in the law because then he would have received services that I provided." App. at 317.[10] Plainly these comments are not evidence that Dr. DeFlaminis refused to provide the funding to Lauren because of appellants' attempts to enforce Lauren's IDEA rights.[11] Indeed, the comments have nothing to do with

[10]In appellants' brief they extract snippets of Dr. DeFlaminis's deposition which misconstrue what he was saying. The district court supplied the appropriate context.

[11]Based on our considerable experience in these types of cases we can understand the reason for Dr. DeFlaminis's view of the special education litigation landscape, though we do not place the blame for the situation on the appellants or the District in this case or, in general, on parents or school districts in such litigation. In this regard we point out that in this case each side of the controversy is prevailing in part and losing in part.

Regardless of where the responsibility for the litigation may be, a fair-minded person interested in the welfare of disabled or handicapped children viewing special education litigation naturally would believe that it would be better to expend the money and energy now devoted to lawsuits on the education of children, particularly those needing special education services. Indeed, it is not easy to understand how anyone could have a different view unless he believes that the purpose of litigation is to generate legal fees.

In this case we cannot help but wonder whether since the start of the disputes more money has been spent on Lauren's education or on legal fees concerning the resolution the disputes regarding her education.

15

Dr. DeFlaminis's treatment of Lauren. After all, appellants were in no way involved in what happened to Dr. DeFlaminis's son. Thus, contrary to the situation in the cases of San Filippo v. Bongiovanni, 30 F.3d 424, 434 (3d Cir. 1994), and Hill v. City of Scranton, 411 F.3d 118, 133 (3d Cir. 2005), that the appellants raise, a trier of the fact simply cannot draw an inference that Dr. DeFlaminis engaged in retaliatory conduct from these post hoc, general comments.

Appellants also believe that Dr. Lugar's continued insistence that they sign an agreement with a waiver even after the District's agreement to pay the 2000-2001 tuition at Hill Top suggests a retaliatory animus. Dr. Lugar testified at her deposition that she believed the school board's approval was conditioned on execution of the agreement. The district court held that Dr. Lugar's "mistaken apprehension about the legal ramifications of the events of the November Board meeting does not automatically transform her efforts to have the parents sign a settlement agreement into retaliatory ones. There is no other evidence in the record to indicate a material question of fact as to Dr. Lugar's motivations." Lauren W., 2005 WL 1353643, at *22.

Appellants argue that the summary judgment standard, which requires that all reasonable inferences be drawn in their favor as the non-moving parties, precluded the district court from conclusively inferring that Dr. Lugar's "mistaken apprehension" was non-retaliatory. We find this argument

---

In mentioning this point we observe that there have been four separate district court cases, two initial administrative proceedings, one administrative appeal, and one judicial appeal, arising from this controversy with steps within the proceedings too numerous to recount in full. Moreover, resolution of the parties' ongoing disputes has required substantial public expenses for the employment of hearing and administrative appeals officers and for federal judges and for related expenditures. Clearly, it is unfortunate that the providing of educational services, which surely should be done on a nonconfrontational basis, frequently has become, like practically everything else in our society, a matter for resolution by courts and administrative agencies, often in heated proceedings.

unpersuasive as this evidence cannot support a conclusion that the District's actions were retaliatory inasmuch as appellants have failed to put forth even one specific fact to support an inference that Dr. Lugar took her actions in retaliation for appellants' conduct in engaging in a protected activity.

### 4. Inconsistencies in explanations

Fourth, appellants contend that inconsistencies in Dr. Lugar's explanations for the District's refusal to provide related services support an inference of retaliatory causation. Dr. Lugar initially testified at the administrative hearing that the District could not provide related services at Hill Top because the Pennsylvania Department of Education prohibited it from providing such services at non-approved private schools. Appellants, however, point out that Dr. Lugar subsequently testified at her deposition that she did not know if the District was prohibited from providing related services in all cases of placements in non-approved private schools (testimony that was consistent with her prior testimony) or whether the District may have refused to do so in this particular case because of Lauren's specific placement.

We have reviewed Dr. Lugar's deposition. In fact, although she initially waivered on the question of whether the District "couldn't" or "wouldn't" provide the related services in Lauren's situation (the deposition was years after the relevant events), she concluded that counsel advised her that she "couldn't" provide the related services. App. at 335. This conclusion was consistent with her testimony before the hearing officer and thus there is no basis on which to draw an inference of retaliation from her testimony.

### 5. Interested witnesses

Fifth, appellants contend that the district court improperly relied upon the testimony of interested witnesses, Drs. DeFlaminis and Lugar, in concluding that the District did not act by reason of a retaliatory intent when it denied Lauren tuition funding and related services. Appellants rely on Hill, which states that "when drawing all reasonable inferences in

17

favor of the non-movant [for the purposes of summary judgment] the courts must disregard evidence the jury is not required to believe, including testimony of interested witnesses." <u>Hill</u>, 411 F.3d at 129 n.16 (citing <u>Reeves v. Sanderson Plumbing Prods. Inc.</u>, 530 U.S. 133, 149-51, 120 S.Ct. 2097, 2109-10 (2000)).

Appellants, however, misconstrue the district court's decision. In this case on the retaliation counts they had the burden as the non-moving party on the District's motion for summary judgment "to make a showing sufficient to establish the existence of [each] element essential to [their] case." <u>Ikon Office Solutions</u>, 277 F.3d at 666. To satisfy the causation element of retaliation, appellants brought the district court's attention to Drs. DeFlaminis's and Lugar's depositions. The district court concluded that this testimony did not say what appellants claim that it said. That is, the testimony did not provide evidence of retaliatory intent.

We also point out that appellants sued Drs. DeFlaminis and Lugar individually so they were more than interested witnesses, they were parties facing the threat of substantial judgments being entered against them.[12] We cannot believe that the law precludes a party from presenting his own testimony on a summary judgment motion which, of course, is not to say that when there is conflicting testimony the court may accept the testimony of one witness, even if a party, rather than another. Indeed, in <u>Hill</u> which appellants cite, we made our comment regarding disregarding testimony of interested witnesses after we explained that the case involved contradictory evidence. The fact is that in considering a motion for summary judgment the court should believe uncontradicted testimony unless it is inherently implausible even if the testimony is that of an interested witness.[13]

_____

[12]We do not know whether if there had been such judgments they would have been protected by insurance or a right of indemnification from the District.

[13]For example in a controlled intersection traffic accident case if the moving party on a motion for summary judgment presents his

18

In sum, appellants have failed to produce sufficient evidence to establish that there was a genuine issue of material fact on their charge that the District denied funding and related services for Lauren without the required waiver for a retaliatory reason. There is simply no basis in the evidence to link appellants' campaign to secure funding and related services and the District's delay in satisfying or rejecting their requests. Because appellants have failed to make a showing sufficient to survive a motion for summary judgment on the causation element of a retaliation claim, the district court correctly granted summary judgment against them on that claim.[14]

B.      Count I: Compensatory Education and Related Services

Appellants appeal from the district court's order denying their request for reversal of the administrative decision holding that Lauren was not entitled to compensatory education while she was at Hill Top during the 2000-2001 and 2001-2002 school years.[15] Specifically, appellants seek compensatory education under both the IDEA and the Rehabilitation Act for the District's failure to provide Lauren with related services, including social skills training, psychology services, and

_____

disposition testimony that the light was green for him and red for the other party and there is no contrary evidence, and there is nothing implausible about the deposition, in considering the motion the court should accept the deposition testimony as true. If it does not do so then, contrary to all precedent, it would allow the nonmoving party to defeat the motion with mere allegations.

[14]The District as such and Drs. DeFalminis and Luger, respectively, claim municipal and qualified immunity on appellants' retaliation claims. In view of our disposition of the causation issue we do not consider the immunity defenses.

[15]In the district court appellants also sought compensatory education for the District's failure to provide related services in years prior to the 2000-2001 school year. The district court denied this claim but appellants do not appeal that decision.

psychiatric services, while she was at Hill Top, as well as reimbursement for independent evaluations for which they paid.

### 1. Compensatory education under the IDEA

Under the IDEA a disabled student is entitled to a FAPE until age 21. 20 U.S.C. § 1412(a)(1)(A). However, "[a]n award of compensatory education allows a disabled student to continue beyond age twenty-one in order to make up for the earlier deprivation of [a FAPE]." Ridgewood Bd. of Educ. v. N.E. ex rel. M.E., 172 F.3d 238, 249 (3d Cir. 1999). "[A] disabled student's right to compensatory education accrues when the school knows or should know that the student is receiving an inappropriate education." Id. at 250. Under the IDEA a student is receiving an inappropriate education if the program is not providing "significant learning" and conferring a "meaningful benefit."[16] Id. at 247.

In determining whether Lauren received an "appropriate education" at Hill Top during the 2000-2001 and 2001-2002 school years, we review the district court's findings for clear error recognizing that the district court gave "due weight" to the hearing officer's factual findings which it deemed "prima facie correct." In this case, the hearing officer determined that Hill Top provided Lauren with appropriate social and psychological services and that she continued making gains in those areas. Joanne Waber, a teacher at Hill Top, testified that Lauren received "constant feedback and monitoring" with respect to her social-skill needs and Lauren attended group counseling twice a week with a psychologist or a social worker. Lauren W., 2005 WL 1353643, at *13. In addition, Hill Top has a clinical

---

[16]For clarity we point out that 20 U.S.C. § 1412(a)(10)(C)(ii), dealing with reimbursement for private school placement, is not involved here because appellants are not seeking reimbursement for related services for which they paid, except with respect to the private evaluation which we will address later. Rather, appellants contend that Lauren is entitled to compensatory education by reason of the District's failure to provide related services while Lauren attended Hill Top. Thus, appellants are seeking prospective injunctive relief rather than reimbursement for the education Lauren already has received.

20

psychologist on staff and every student has a counselor or clinician available to her whenever she needs extra support.

Not surprisingly, Lauren progressed under these conditions. According to Ms. Waber, Lauren "made quite a bit of progress" while at Hill Top, specifically with respect to her social skills. Additionally, the District school psychologist, Richard Doolan, produced a Comprehensive Evaluation Report on July 24, 2000, indicating that Lauren's social and emotional well-being improved dramatically while she was at Hill Top. Likewise, the proposed IEP for the 2002-2003 school year indicates that "[s]ince entering Hill Top, Lauren's experience has been 'extremely positive' with improved grades, self-esteem and friendships, according to her teachers." App. at 286. Moreover, appellants engaged a private psychologist whose report indicated that Lauren was "doing very well at Hill Top." App. at 179. Based on these evaluations the hearing officer concluded that Lauren was "a successful student making progress each year and demonstrating good relationships with her peers." District's br. at 42. Lauren's parents in their deposition testimony corroborated this assessment of Lauren's progress.

While the district court concluded that Lauren's work habits and behavior were inconsistent, the record requires that a court examining it nevertheless conclude that Hill Top provided "significant learning" and conferred a "meaningful benefit" on Lauren. Thus, compensatory education for the related services allegedly not provided at Hill Top is not warranted. Appellants have failed to offer evidence that demonstrates that the district court committed clear error.[17]

### 2. Related services under the Rehabilitation Act

Appellants next argue that even if Lauren was not

---

[17]We also are troubled by the fact that appellants unilaterally selected Hill Top for Lauren's placement. Thus, appellants obtained exactly what they sought and now the essence of their argument is that they should have asked for more. We do not find this argument compelling.

entitled to compensatory education under the IDEA, she is entitled to that relief under section 504 of the Rehabilitation Act. Appellants rely on Lower Merion School District v. Doe, 878 A.2d 925 (Pa. Commw. Ct. 2005), appeal granted, 899 A.2d 1125 (Pa. 2006), in advancing this argument. In Lower Merion, the court decided that the Rehabilitation Act entitled a disabled student attending private school to related services at the public school so long as the student was enrolled dually in the public school district and the related services were needed to provide the disabled student with a FAPE.[18] Id. at 927.

Our case, however, differs factually in two important ways from Lower Merion. First, the court premised Lower Merion on the fact that the private school student was enrolled dually in the public school district. In contrast, in our case, although dual enrollment is permissible under section 502 of the Pennsylvania Public School Code of 1949, as amended, 24 Pa. Stat. Ann. § 5-502 (West 1992), there is no evidence of which we are aware that Lauren continued her enrollment in District schools after beginning at Hill Top.[19]

---

[18]The relevant facts of Lower Merion are as follows. The school district determined after an evaluation of the student that the student suffered from spastic diplegia, difficulties with fine motor skills, and visual motor delays, and thus was eligible to receive occupational therapy services under section 504 of the Rehabilitation Act which requires the district to provide a FAPE to "each qualified handicapped person," 34 C.F.R. § 104.33(a). Lower Merion, 878 A.2d at 926-28 & n.2. The student's parents decided to enroll their child in an independent private school outside of the district (for which they paid and for which they did not seek tuition reimbursement) and then requested that the district provide additional occupational services at the public school where the child was enrolled dually. Id. at 926. Thus, the only issue before the court was whether the handicapped child by enrolling in the private school forfeited his right to the occupational services, which the parties agreed were necessary for a FAPE. The majority determined that the child's rights to related services were not waived in those circumstances. Id. at 933.

[19]In appellants' brief they recite, without reference to the record, that "Lauren was dually enrolled at Radnor, a public school, and Hill Top, a private school." Appellants' br. at 40. The District answered in

22

Second, and quite independently it was undisputed in Lower Merion that occupational services were necessary to provide the disabled child with a FAPE as required under section 504 of the Rehabilitation Act. Lower Merion, 878 A.2d at 926 & n.2. The only issue was whether the student forfeited those services at the public school by enrolling in the private school, where the student was not offered occupational therapy. In contrast, in this case the Hill Top curriculum (without additional related services) provided Lauren with a FAPE and thus satisfied the District's obligations. Compliance with federal law did not require that the District offer related services to Lauren. Thus, the principles in Lower Merion would not be implicated in this case even if Lauren had been dually enrolled in Hill Top and District schools.

### 3. Reimbursement for the independent evaluation

Appellants contend that they are entitled to reimbursement for the cost of an independent educational evaluation they obtained from Dr. Margaret Kay after appellants expressed their agreement with the District's evaluation. Under 34 C.F.R. § 300.502(b)(1), "[a] parent has the right to an independent educational evaluation at public expense if the parent disagrees with an evaluation by the public agency." We have applied the regulation broadly to permit reimbursement not only when the parents expressly disagree with the evaluation but also when "the parents[] fail[] to express disagreement with the District's evaluations prior to obtaining their own" evaluation because unless the regulation is so applied "the regulation [would be] pointless because the object of parents' obtaining their own evaluation is to determine whether grounds exist to challenge the District's." Warren G. ex rel. Tom G. v. Cumberland County Sch. Dist., 190 F.3d 80, 87 (3d Cir. 1999). Consequently, we have held that reimbursement may be warranted where a parent does not take a position with respect to the district's evaluation or otherwise "fails to express

---

discussing Lower Merion, that in that case "the child was enrolled in the public school to receive the related services [but] [t]here is no evidence that Lauren did the same." District's br. at 44 n.9.

23

disagreement."

We, however, never have held that parents who expressly agree with a district's evaluation but obtain an independent evaluation are entitled to reimbursement for the evaluation and we cannot imagine how we could do so. Indeed, if we reached that conclusion our process would be judicial alchemy because 34 C.F.R. § 300.502(b)(1) is applicable when a parent "disagrees" with the public agency's evaluation. A holding that "disagrees" includes "agrees" surely would be noted far and wide and justifiably would subject us to derisive comments. Of course, in this case inasmuch as Lauren's parents both checked "yes" and signed the District's evaluation they indisputably agreed with it. Though no doubt their agreement did not preclude them from obtaining their own evaluation they could not make a claim on the District to pay for it.

### C. Count V: "Child Find" Duty Claim

In Count V of their complaint, appellants seek compensatory damages for violations of the IDEA's "child find" duty which requires the District to have a system in place to identify, locate, and evaluate all children with disabilities residing in their district. 20 U.S.C. § 1412(a)(3). Appellants allege that in 1992 Lauren's mother spoke to District elementary school officials about her daughter's educational needs and they told her that the District could not accommodate Lauren and that she should find a private school for her at her parents' own expense. The district court held that the settlement agreement barred the claim as it waived appellants' federal and state actions and released the District from any liability relating to Lauren's education and placement through the 1999-2000 school year.

Appellants argue that the district court erred because the District rescinded the settlement agreement by breaching its obligation under the agreement to pay counsel fees to appellants' prior counsel. Thus, they contend that the waiver of rights provision in the agreement is not binding. We find that there is no genuine issue of material fact with respect to the District's

24

alleged breach and rescission of the contract. Appellants have failed to put forth any evidence indicating that the prior attorney was, in fact, not paid. Even at oral argument before us appellants' counsel did not know if he had been paid. Moreover, even if he was not paid, a breach must be material to allow rescission, see General Motors Corp. v. New A.C. Chevrolet, Inc., 263 F.3d 296, 315-17 (3d Cir. 2001), and the District's failure to pay the counsel fees, if there was such a failure, would not be a material breach in these circumstances.[20] After all, if the District did not pay the attorney the problem is his, not appellants', inasmuch as appellants do not contend that he is seeking payment for his services from them even though a substantial time has elapsed since he performed his services. Thus, the alleged breach has not been prejudicial to them.

### D.    Cross-Appeal: Tuition Reimbursement

On cross-appeal, the District argues that the district court erred in affirming the administrative decision holding that Lauren's parents were entitled to tuition reimbursement for the 2000-2001 and 2001-2002 school years.

Under 20 U.S.C. § 1412(a)(10)(C)(ii),

> If the parents of a child with a disability, who previously received a special education and related services under the authority of a public agency, enroll the child in a private elementary school or secondary school without the consent of or referral by the public agency, a court or a hearing officer may

---

[20]The District also argues that a one-year equitable limitations period bars the child-find duty claim, citing, inter alia, Bernardsville Board of Education v. J.H., 42 F.3d 149, 158 (3d Cir. 1994). We have no need to address this argument as we are barring the child-find duty claim on other grounds.

25

require the agency to reimburse the parents for the cost of that enrollment if the court or hearing officer finds that the agency had not made a free appropriate education available to the child in a timely manner prior to that enrollment.

In <u>Florence County School District Four v. Carter ex rel. Carter</u>, 510 U.S. 7, 15, 114 S.Ct. 361, 366 (1993), the Supreme Court determined that a student may be entitled to reimbursement if "a federal court concludes both that the public placement violated IDEA and that the private school placement was proper under the Act." Thus, under <u>Florence County</u> "a court may award a disabled student the cost of his private placement if (1) the court determines the student's IEP is inappropriate and (2) the student demonstrates that the private placement he seeks is proper." <u>Ridgewood</u>, 172 F.3d at 248. A private placement is "proper" if it (1) is "appropriate," i.e., it provides "significant learning" and confers "meaningful benefit," and (2) is provided in the least restrictive educational environment. <u>Id.</u>

The District does not contend that the first prong of the <u>Florence County</u> test was not satisfied as it concedes that it did not offer an IEP for Lauren for the 2000-2001 and 2001-2002 school years, nor does it make an argument with respect to the least restrictive environment. The District challenges only the "appropriateness" of the Hill Top placement under the second <u>Florence County</u> prong.[21] The District believes that Hill Top was not appropriate because it did not offer the resources or training adequate to provide Lauren with "significant learning" or a "meaningful benefit," and thus the District should not have to reimburse Lauren's parents for the 2000-2001 and 2001-2002 tuition. Specifically, the District argues that Hill Top was not

---

[21]The District does not contend that Lauren's parents are not entitled to tuition reimbursement for 2000-2001 and 2001-2002 by reason of the language set forth in 20 U.S.C. § 1412(a)(10)(C)(ii) that for the parents to obtain reimbursement for the private school enrollment the child with a disability "previously [have] received a special education and related services under the authority of a public agency."

appropriate because it was not a "Pennsylvania approved private school" and was not licensed to provide special education programming; the Hill Top teachers lacked certifications in special education; Hill Top did not provide an IEP; and Hill Top did not structure an individualized program aimed at Lauren's specific academic, social, and behavioral needs.

The Court in Florence County specifically rejected arguments similar to those that the District presses here. In that case, the Court held that a private school in the context of a unilateral parental placement is not required to have an IEP as "the parents' rejection of the school district's proposed IEP is the very reason for the parents' decision to put their child in a private school." Florence County, 510 U.S. at 13, 114 S.Ct. at 365. Likewise, reimbursement is not "necessarily barred by a private school's failure to meet state education standards" or by the parents' selection of a program unapproved by the state. Id. at 14, 114 S.Ct. at 365; see also Warren G., 190 F.3d at 83 ("[A] private school's failure to meet state education standards is not a bar to reimbursement under the IDEA.").

With respect to the other alleged deficiencies, we defer to the factual findings of the hearing officer and the district court that the Hill Top placement was appropriate. As we discussed at length above, both the hearing officer and district court concluded that the services provided to Lauren at Hill Top were appropriate and she continued to make progress in reaching her academic, social, and behavioral goals. The District has not provided evidence that overcomes the deference that we must give to these factual findings. Accordingly, we will affirm the district court decision that the District is responsible for the 2000-2001 and 2001-2002 Hill Top tuition.

E.  Cross Appeal: Unjust Enrichment

The hearing officer and the district court concluded that the District's proposed IEP for the 2002-2003 school year and placement in the public school's Bridge Program was appropriate. However, the District already had paid for the

27

2002-2003 Hill Top tuition pursuant to a prior district court order requiring it to fund the tuition during the pendency of the dispute as Hill Top was Lauren's "pendent placement" under 20 U.S.C. § 1415(j). See Lauren W., 2002 WL 32130764. The District believes that it is entitled to a partial reimbursement for the 2002-2003 tuition under the theory of unjust enrichment. The District contends, as it did in the district court, that Lauren's parents should reimburse it for the portion of the 2002-2003 tuition after December 20, 2002, the deadline the hearing officer imposed at which time Lauren was to return to the public school district where the program was deemed appropriate.[22] See Lauren W., 2005 WL 2989712, at *3. The district court rejected the argument and so do we.

The elements necessary to prove that a party is entitled to recovery on the basis of the equitable doctrine of unjust enrichment are: (1) benefits conferred on one party by another; (2) appreciation of such benefits by the recipient; and (3) acceptance and retention of these benefits in such circumstances that it would be inequitable for the recipient to retain the benefits without payment of value. Allegheny Gen. Hosp. v. Philip Morris, Inc., 228 F.3d 429, 447 (3d Cir. 2000). In the circumstances of this case, considering the applicable law and facts, it would not be inequitable for Lauren's parents to retain the benefits of the tuition payment that the District made to cover the Hill Top tuition for the entire 2002-2003 school year.

---

[22]We note that the District's counterclaim for unjust enrichment sought reimbursement "for the pro-rata share of tuition for the portion of the 2002-2003 school year, from December 20, 2002 to the end of the school year in 2003." Therefore the District was not seeking reimbursement for the money it advanced to cover the 2003-2004 school year and the district court properly reached a decision only with respect to recovery of money the District paid for the second portion of the 2002-2003 school year, see Lauren W., 2005 WL 2989712, at *6. Thus, the District's notice of appeal recites that it appeals from the district court's denial of the District's "right to be reimbursed for the tuition payments at Hill Top Prepatory School from January 2003 until the end of the 2002-2003 school year." App. at 3. Therefore, we will not address whether the District is entitled to reimbursement for the balance of the 2002-2003 school year or the 2003-2004 school year.

During the course of the litigation, the District agreed to drop its demand for half of the 2002-2003 tuition in exchange for appellants' voluntary withdrawal of a motion for preliminary injunction they filed in the case of Lauren W. v. Radnor Township School District, No. 03-CV-0665. Appellants withdrew the motion and the District is bound by this agreement. As the district court put it, "Defendants . . . received the benefit of avoiding a certain amount of litigation-related expenditures of time and money in return for their dropping their request that Lauren's parents take financial responsibility for the second half of the 2002-2003 school year . . . . [I]t cannot be said, under these factual circumstances, that [Lauren's parents'] retention of that tuition was unjust." Lauren W., 2005 WL 2989712, at *4. For this reason, we will affirm.

## V. CONCLUSION

For the foregoing reasons we will affirm the orders entered on June 3, 2005, and July 21, 2005, and the judgment entered on August 1, 2005. The parties will bear their own costs on this appeal.

———————

29