Christine KOUGHER; Tracy Miller; Keystone Golden Retriever Rescue Inc., Appellants

v.

Rick BURD; Mary Bender; Nathan Myer; Angie H. Holloway.

No. 07–1506.

United States Court of Appeals, Third Circuit.

Submitted Under Third Circuit LAR 34.1(a) March 14, 2008.

Filed: April 16, 2008.

Donald A. Bailey, Bailey & Ostrowski, Harrisburg, PA, for Appellants.

J. Bart Delone, Office of Attorney General of Pennsylvania Strawberry Square, Harrisburg, PA, for Appellees.

Before: FUENTES, CHAGARES, and VAN ANTWERPEN, Circuit Judges.

OPINION OF THE COURT

CHAGARES, Circuit Judge.

Christine Kougher, Tracy Miller, and Keystone Golden Retriever Rescue Inc. (Plaintiffs/Appellants) appeal the District Court's grant of summary judgment in favor of Rick Burd, Mary Bender, and Nathan Myer (Defendants/Appellees). Plaintiffs alleged that Defendants retaliated against them for speech concerning the mistreatment of dogs at a Pennsylvania kennel. For the following reasons, we will affirm the District Court's judgment.

I.

As we write only for the parties, our summary of the facts is brief. Keystone Golden Retriever Rescue Inc. (Rescue) is a private, non-profit organization that aids in the care and adoption of homeless golden retrievers. Christine Kougher (Kougher) serves as Rescue's president. In June 2003, Angie H. Holloway (Holloway), who operated an unlicensed kennel in Pennsylvania, placed three dogs with Rescue. The dogs arrived at Rescue suffering from a variety of physical ailments. Seeking an investigation of Holloway's operation, Kougher contacted Tracy Miller (Miller), a Pennsylvania state dog warden employed by the Bureau of Dog Law Protection (Bureau) of the Pennsylvania Department of Agriculture (Department); Rick Burd (Burd), Executive Director of the Bureau; and Mary Bender (Bender), Director of Enforcement for the Bureau. The Bureau ordered Holloway to apply for a kennel license, and Bender, Burd, Miller, and a state veterinarian conducted an inspection

of Holloway's kennel in October 2003. After discovering 131 dogs living in unsanitary conditions, Miller filed state animal cruelty charges against Holloway. The Bureau directed Miller to withdraw these citations, based upon its position, reiterated in a December 2003 memorandum, that dog wardens lack the proper authority to file such charges. On November 20, 2003, Holloway was denied a kennel license and ordered to cease and desist operations; the denial was affirmed at an administrative hearing in January 2004.

In October 2003, Kougher sent a letter to the Department's Secretary complaining about the Bureau's inaction on the Holloway matter. That same month, while traveling together, Burd allegedly told Miller that he was considering filing criminal charges against Kougher due to her interference in the Bureau's Holloway investigation. Against Burd's request, Miller informed Kougher of the conversation, advising her to be careful. Kougher continued to communicate with various state officials and interest groups after the meeting between Burd and Miller; in 2004, Rescue experienced a delay in receiving its kennel tags.

In January 2004, Miller refiled animal cruelty charges against Holloway. He also spoke to the *Bedford Gazette* regarding the Bureau's ongoing investigation of Holloway's kennel, in spite of a policy that dog wardens refer all media inquiries to the Department's press office. On January 6, 2004, the article ran in the *Bedford Gazette*. Miller subsequently received a one-day suspension due to his unauthorized communication with the press about a pending investigation and his failure to complete required kennel inspections for 2003.

In October 2004, Kougher, Rescue, and Miller filed a § 1983 action against Burd, Bender, and Nathan Myer (Myer), a member of the Dog Law Advisory Board, alleging that Defendants retaliated against them for their speech.[1] The District Court for the Middle District of Pennsylvania granted Defendants' motion for summary judgment, finding that Kougher and Rescue failed to establish retaliatory action, while Miller's expressions fell within his public duties and therefore were not protected. This appeal followed. We have jurisdiction pursuant to 28 U.S.C. § 1291, and we will affirm.

## II.

When the District Court grants a motion for summary judgment, "[o]ur review is plenary." *Jensen v. Potter*, 435 F.3d 444, 448 (3d Cir.2006). Summary judgment is appropriate when no genuine issues of material fact are presented and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). We "resolve all factual doubts and draw all reasonable inferences in favor of [the appellants]." *DL Res., Inc. v. FirstEnergy Solutions Corp.*, 506 F.3d 209, 216 (3d Cir.2007).

## III.

### A.

Plaintiffs first argue that Defendants took retaliatory action against Kougher and Rescue for their speech regarding the Holloway kennel operation. Namely, they allege that Defendants delayed Rescue's license renewal, misdirected Kougher and Rescue, and threatened Kougher with

1. Plaintiffs also brought suit against Holloway; however, the District Court dismissed these claims *sua sponte,* since Holloway is a non-state actor and cannot be liable under § 1983. Plaintiffs do not appeal this determination.

criminal prosecution. A § 1983 retaliation claim predicated on the First Amendment must show that: (1) the plaintiff engaged in activity protected by the First Amendment, (2) the government responded with retaliatory action sufficient to deter a person of ordinary firmness from exercising his or her rights, and (3) the protected activity was the cause of the retaliatory action. *Lauren W. ex rel. Jean W. v. Deflaminis*, 480 F.3d 259, 267 (3d Cir. 2007); *Estate of Smith v. Marasco*, 318 F.3d 497, 512 (3d Cir.2003).

Here, the District Court found that the retaliation claims of Kougher and Rescue were either *de minimis* or too vague to support a First Amendment violation, save for the criminal prosecution threat allegedly communicated by Burd. Regarding this threat, the court determined that Burd's conduct did not rise to the level of actionable retaliation. We agree.

■ Plaintiffs' allegations that Rescue was temporarily denied kennel tags and that Kougher and Rescue received misinformation from the Bureau "in their efforts to monitor the puppy mill issue and the Holloway investigation," Appellant Br. at 24, are not sufficient to support a First Amendment violation. *See McKee v. Hart*, 436 F.3d 165, 170 (3d Cir.2006) (effect of alleged retaliation on protected activities "need not be great in order to be actionable, but [ ] must be more than *de minimis*") (quotation marks and citation omitted). Plaintiffs argue that the sufficiency standard for measuring the necessary level of retaliatory action only applies in the public employment context. They contend that "there is no such thing as a *de minimis* act of retaliation in the government's dealing with [ ] private citizen[s]" such as themselves. Appellant Br. at 26. This assertion is not grounded in law, and courts have acknowledged that alleged retaliatory action against private citizens must reach a certain level in order to be actionable. *See, e.g., Suarez Corp. Industries v. McGraw*, 202 F.3d 676, 686 (4th Cir.2000) ("just as the nature of retaliatory action impacts whether a public employee's rights were adversely affected, so too the nature of the retaliatory acts impacts whether those acts were actionable when a private citizen is the speaker and a public official is the retaliator.").

■ Plaintiffs also contest the District Court's determination that Kougher and Rescue, who continued to engage in protected speech after the conversation between Burd and Miller, failed to establish that they were injured by Defendants' actions. Plaintiffs argue that they need only demonstrate that Defendants' conduct was intended to deter a person of ordinary firmness from exercising his First Amendment rights. While the District Court did find that Kougher and Rescue failed to show that Defendants' actions adversely affected the exercise of their First Amendment rights, the court based summary judgment on its determination that Plaintiffs established no retaliatory action. Burd's conduct—telling Miller in confidence that he was *considering* criminal charges against Kougher—did not constitute retaliatory action. Burd did not inform Miller that he was definitely going to file charges, and Kougher never faced prosecution. Thus, the District Court properly determined that the claims asserted against Defendants by Kougher and Rescue failed.

## B.

Plaintiffs also argue that the District Court erred in determining that Miller's retaliation claims failed because they concerned unprotected speech. To state a First Amendment retaliation claim, a public employee plaintiff such as Miller must allege: (1) that the activity in question is

protected by the First Amendment, and (2) that the protected activity was a substantial factor in the alleged retaliatory action. *See Hill v. City of Scranton*, 411 F.3d 118, 125 (3d Cir.2005). "The first factor is a question of law; the second factor is a question of fact." *Hill v. Borough of Kutztown*, 455 F.3d 225, 241 (3d Cir.2006).

A public employee's statement is protected activity when: "(1) in making it, the employee spoke as a citizen, (2) the statement involved a matter of public concern, and (3) the government employer did not have 'an adequate justification for treating the employee differently from any other member of the general public' as a result of the statement he made." *Id.* (*quoting Garcetti v. Ceballos*, 547 U.S. 410, 418, 126 S.Ct. 1951, 164 L.Ed.2d 689 (2006)). When a public employee makes a statement pursuant to his official duties, he does not speak "as a citizen." *Ceballos*, 547 U.S. at 421, 126 S.Ct. 1951. "Whether an employee's speech addresses a matter of public concern must be determined by the content, form, and context of a given statement, as revealed by the whole record." *Rankin v. McPherson*, 483 U.S. 378, 384, 107 S.Ct. 2891, 97 L.Ed.2d 315 (1987) (quotation marks omitted).

█ Miller's speech was not protected by the First Amendment. Miller admits that his claims "do involve some element of [ ] Miller's performance of his official duties," but argues that his actions "involve[d] much more than that." Appellant Br. at 15. Miller contends that the District Court could not segregate his official duties from his expressive conduct as a private citizen concerned about the enforcement of state dog laws. Miller's actions that led to his suspension, however, were entirely job-related.[2] He filed

charges against Holloway in his capacity as a state dog warden, and his unauthorized contact with the press concerned matters related to his professional duties. Therefore, the District Court correctly determined that "Miller's claims fail[ed] because his expressions fall clearly within the scope of his professional duties as a state dog warden." Appendix (App.) 31.

## C.

Finally, Plaintiffs note that the District Court did not explicitly address the liability of Defendant Myer, and assert that Myer should not have been granted summary judgment due to an alleged relationship between Holloway and Myer that resulted in the Bureau's preferential treatment of Holloway and retaliation against Plaintiffs. The court's summary judgment determination, however, was based on its determination that no actionable retaliation existed; any supposed facts concerning a Holloway–Myer relationship would not change this conclusion.

## IV.

For the foregoing reasons, we will affirm the judgment of the District Court.

---

2. Miller also asserts that he was denied an opportunity for a promotion in retaliation for his communications with the media. The

District Court properly found this claim abandoned for lack of record support, and we will not further address it.