CLD-289                                            **NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 13-4203
_____

COREY BRACEY,
                                   Appellant

v.

PENNSYLVANIA DEPARTMENT OF CORRECTIONS; SUPERINTENDENT
GRATERFORD SCI; DEPUTY BRYANT; MAJOR GILLMORE; MAJOR SUTTER;
CAPTAIN WHITE; CAPTAIN FRONZ; CAPTAIN MORROW; LIEUTENANT
CALDWELL; LIEUTENANT VINCENT; LIEUTENANT DEAL; SERGEANT
WOLFE;  CORRECTION OFFICER STAFFORD; MAXINE OVERTON; DR.
ROMAN; MENTAL HEALTH MANAGEMENT; WILLIAM WOODS; E.
BROWNLEE, GR-9693;CORRECTION OFFICER HARMON; LIEUTENANT IRWIN;
SERGEANT RUFF
_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. Civil No. 1-11-cv-00004)
District Judge:  Honorable Cathy Bissoon
_____

Submitted for Possible Dismissal Pursuant to 28 U.S.C. § 1915(e)(2)(B)
or Summary Action Pursuant to Third Circuit LAR 27.4 and I.O.P. 10.6
June 26, 2014
Before:  FUENTES, JORDAN and SHWARTZ, <u>Circuit</u> <u>Judges</u>

(Opinion filed: July 2, 2014 )
_____

OPINION
_____

PER CURIAM

Corey Bracey, a Pennsylvania prisoner proceeding pro se, appeals from the District Court's order granting the defendants' motion for summary judgment. After careful review of the record, we conclude that this appeal does not present a substantial question. Therefore, we will summarily affirm.

On September 14, 2010, and again on February 2, 2011, Bracey was attacked by other inmates while in the exercise yard of the Restricted Housing Unit (RHU) at SCI-Albion. In his complaint, he alleged that Department of Corrections (DOC) officials and employees failed to protect him from those assaults, retaliated against him after he filed grievances related to conditions in the RHU, and destroyed evidence concerning his claims. He also brought state law tort claims for assault and battery, and medical malpractice. The defendants filed a motion for summary judgment, which a Magistrate Judge recommended granting. In particular, the Magistrate Judge concluded that the evidence failed to demonstrate that the defendants were deliberately indifferent to a serious risk of harm, and found that the issuance of misconducts and denial of privileges were unrelated to the filing of grievances.[1] Over Bracey's objections, the District Court

---

[1] In addition, to the extent that Bracey sought to impose liability based solely on the defendants' supervisory role, the Magistrate Judge properly recommended rejecting his claims. See Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988). The Magistrate Judge also correctly concluded that Bracey failed to point to evidence in the record demonstrating that the defendants conspired to destroy videotapes related to the first assault. According to the defendants, the videotapes were not "preserved by being burned to a disc before the cameras re-recorded over those incidents." Bracey has not pointed to any disputed material facts suggesting that the re-recording of the videotapes was unconstitutional, and he also failed to allege facts plausibly suggesting an illicit agreement. See Parkway Garage, Inc. v. City of Phila., 5 F.3d 685, 700 (3d Cir. 1993) (stating that to demonstrate the existence of a conspiracy under § 1983, "a plaintiff must

adopted the Magistrate Judge's Report and Recommendation, declined to exercise supplemental jurisdiction over the remaining state law claims, <u>Borough of W. Mifflin v. Lancaster</u>, 45 F.3d 780, 788 (3d Cir. 1995), and granted the defendants' motion for summary judgment. Bracey appealed.

We have jurisdiction pursuant to 28 U.S.C. § 1291. We exercise plenary review over the entry of summary judgment. <u>Doe v. Luzerne Cnty.</u>, 660 F.3d 169, 174 (3d Cir. 2011). In doing so, we draw all reasonable inferences from the record in favor of the non-moving party and will affirm if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); <u>Kaucher v. Cnty. of Bucks</u>, 455 F.3d 418, 422-23 (3d Cir. 2006).

We conclude that summary judgment was properly granted to the defendants on Bracey's failure to protect claims.[2] The Eighth Amendment imposes "a duty upon prison

---

show that two or more conspirators reached an agreement to deprive him or her of a constitutional right under color of law.").

[2] We likewise hold that Bracey failed to show a genuine issue of material fact to the extent that he alleged that the correction officers failed to intervene in the assault. <u>See</u> <u>Bistrian v. Levi</u>, 696 F.3d 353, 371 (3d Cir. 2012) (holding that a corrections officer who fails to intervene in an assault may be liable if the officer had "a realistic and reasonable opportunity to intervene" and "simply refused to do so" (quoting <u>Smith v. Mensinger</u>, 293 F.3d 641, 650-51 (3d Cir. 2002))). According to a report of the incident, a fight was "called" at 8:40, "immediately several responding officers arrived to assist, the yard enclosure was entered[,]" and the armed assailant was secured by 8:44. <u>See</u> <u>Odom v. S.C. Dep't of Corr.</u>, 349 F.3d 765, 773 (4th Cir. 2003) (stating that "correctional officers who are present when a violent altercation involving an armed inmate erupts and fail to intervene immediately do not violate the Eighth Amendment if officers are unarmed, unaware of a risk of harm prior to the altercation, and take reasonable steps to intervene safely."). Bracey did not dispute this sequence of events, nor did he allege that correction officers could have reasonably intervened sooner.

3

officials to take reasonable measures to protect prisoners from violence at the hands of other prisoners." Hamilton v. Leavy, 117 F.3d 742, 746 (3d Cir. 1997) (citations and internal quotations omitted). To establish a failure to protect claim, inmates must demonstrate that (1) they are "incarcerated under conditions posing a substantial risk of serious harm"; and (2) the prison official acted with "deliberate indifference" to their health and safety. Farmer v. Brennan, 511 U.S. 825, 834 (1994). "[T]he official must actually be aware of the existence of the excessive risk; it is not sufficient that the official should have been aware." Beers-Capitol v. Whetzel, 256 F.3d 120, 133 (3d Cir. 2001). Actual knowledge can exist where "a substantial risk of inmate attacks was longstanding, pervasive, well-documented, or expressly noted by prison officials in the past," and where "circumstances suggest that the defendant-official being sued had been exposed to information concerning the risk and thus must have known about it." Id. (quoting Farmer, 511 U.S. at 842-43).

In support of his failure to protect claim, Bracey relied on evidence indicating that there had been several altercations at the SCI-Albion exercise yards prior to the date that he was first assaulted.[3] According to the Magistrate Judge, who reviewed *in camera* prison reports provided by the defendants, there were nine such incidents at SCI-Albion

---

[3] It is undisputed, however, that there was no prior tension between Bracey and his assailants, and Bracey did not allege that those assailants had a history of assaulting other inmates. Cf. Bistrian, 696 F.3d at 368-71 (concluding that plaintiff stated plausible failure to protect claim where he alleged, inter alia, that he had advised prison officials that he had been threatened by a violent inmate who later attacked him); see also Ridgewood Bd. of Educ. v. N.E. ex rel. M.E., 172 F.3d 238, 252 (3d Cir. 1999) (stating that a plaintiff cannot avoid summary judgment with speculation; he or she must provide competent evidence from which a rational trier of fact can find in his or her favor).

during the two years leading up to the initial attack on Bracey in September 2010, and no incidents between then and February 2011, when Bracey was attacked for the second time. This evidence fails to demonstrate that there was a pervasive or well-documented substantial risk of inmate attacks, especially when the nine incidents are considered in the context of the numerous exercise yards visits that occurred during the two-year period. Moreover, the circumstances which allegedly caused a substantial risk of harm to Bracey were not prevalent in the prior attacks.[4] Finally, Bracey alleged that prison policy was violated when correction officers (1) hired his assailant as a block janitor (a job which provided the assailant with access to an item that was fashioned into a shank); (2) failed to search the assailant's cell every 30 days; (3) worked in the RHU for more than two years, resulting in complacency and incompetence; (4) failed to pat-search or use a metal detector on RHU inmates going to the exercise yards; (5) provided too few guards to escort inmates on their way to the exercise yards; and (6) did not know their duties. Contrary to his allegations, however, a violation of prison policy "is insufficient by itself to support an argument for deliberate indifference[,]" Longoria v. Texas, 473 F.3d 586, 593 n.9 (5th Cir. 2006), and there is no evidence that a failure to follow prison policies created a substantial risk of serious harm to Bracey.

---

[4] For instance, the September 2010 attack on Bracey involved an inmate who was able to sneak a weapon in to the exercise yard after a prison official failed to recheck the inmate for contraband following a strip search. Bracey, who was still handcuffed, was attacked when his assailant's handcuffs were removed. The assault in February 2011 occurred when another inmate who was placed in the exercise yard with Bracey was able to free one of his hands from the handcuffs, and used the handcuffs as a weapon. Only four of the prior incidents occurred during the process of removing handcuffs from inmates sharing an exercise yard, and none involved the use of a weapon.

Bracey also alleged that his First Amendment rights were violated when the defendants retaliated against him for filing grievances related to alleged "dereliction of safety precautions in the RHU." Specifically, Bracey claimed that the defendants identified him to other inmates as a snitch, issued false misconduct citations, and withheld meals, grooming opportunities, and exercise yard privileges. A prisoner alleging retaliation in violation of the First Amendment must show (1) that he engaged in constitutionally protected conduct; (2) that an adverse action was taken against him by prison officials sufficient to deter him from exercising his constitutional rights; and (3) that there is a causal link between the exercise of his constitutional rights and the adverse action taken against him. Rauser v. Horn, 241 F.3d 330, 333 (3d Cir. 2001). We conclude that the District Court properly held that there was no genuine issue of material fact with respect to whether a causal connection existed between the exercise of Bracey's constitutional rights and the alleged adverse actions. The defendants demonstrated that they issued the misconduct citations because of misbehavior by Bracey.[5] See id. at 334 (holding that even if "a prisoner demonstrates that his exercise of a constitutional right was a substantial or motivating factor in the challenged decision, the prison officials may still prevail by proving that they would have made the same decision absent the protected

---

[5] On several occasions, Bracey was found guilty by a hearing examiner of refusing to obey an order and using abusive, obscene, or inappropriate, language to an employee. See Carter v. McGrady, 292 F.3d 152, 159 (3d Cir. 2002) ("Given the quantum of evidence of Carter's misconduct, we cannot say that the prison officials' decision to discipline Carter for his violations of prison policy was not within the 'broad discretion' that we must afford them."). The record also establishes that Bracey refused meals, grooming opportunities, and exercise, not that they were withheld from him.

6

conduct for reasons reasonably related to a legitimate penological interest.").

Furthermore, we agree that no evidence in the record establishes a causal link between Bracey's grievances concerning security in the RHU and the defendants' alleged labeling of him as a snitch.[6] Cf. Lauren W. ex rel. Jean W. v. DeFlaminis, 480 F.3d 259, 267 (3d Cir. 2007) (holding, in a case involving alleged retaliation under the Individuals with Disabilities Education Act, that to establish causal connection, a plaintiff must prove either a suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or a pattern of antagonism coupled with timing to establish a causal link).

For the foregoing reasons, we will summarily affirm the District Court's order.

---

[6] As the Magistrate Judge noted, Bracey provided unsworn statements from two inmates who stated that Bracey was rumored to be a snitch. But one of those inmates was not housed as SCI-Albion and the other did not indicate when the defendants allegedly identified Bracey as a snitch.